Pamela Turner HIGGINS, Vinita M. Turner Mozangue, Guy O. Turner, by his next friend and sister, Vinita Turner Mozangue, Karla D. Turner, by her next friend and sister, Vinita Turner Mozangue, Kimberly A. Turner, by her next friend and sister, Vinita T. Mozangue, Plaintiffs-Respondents,

v.

Claude W. McELWEE, Jr., Administrator d.b.n. of the Estate of Ernest M. Yokely, deceased, Defendant-Appellant,

and

Anesa Yokely, a minor, and April Yokely, a minor, Defendants-Cross-Appellants,

and

Audrey Clarke, Ernest M. Yokely, III, Defendants.

No. 47697.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 16, 1984.

John J. Horgan, St. Louis, for defendant-appellant McElwee.

Charles J. McMullin, St. Louis, Guardian Ad Litem for defendants-cross-appellants.

Richard B. Blanke, St. Louis, for plaintiffs-respondents.

GAERTNER, Presiding Judge.

On September 7, 1977, three hours after he killed his wife, Elaine, Ernest Yokely killed himself. Two children had been born of their marriage, Anesa and April Yokely. In addition, Ernest was survived by two children of a prior marriage, Audrey Clarke and Ernest Yokely, III. Elaine was also survived by five children from a prior marriage, the plaintiffs in this case. Elaine and Ernest were the owners of certain real estate and a Buick automobile as tenants by the entirety. Each was insured by a policy of life insurance issued by the Wabash Life Insurance Company, in which the other was the named beneficiary. They both died intestate.

On December 7, 1977, Ernest Yokely, III filed an application for letters of administration for the estate of Ernest Yokely, which were duly issued by the then Probate Court of the City of St. Louis. No estate was ever opened for Elaine. The real property and the automobile were inventoried as assets of Ernest's estate. On May 18, 1978, the Wabash Insurance Company issued its draft payable to the estate of Ernest M. Yokely in the amount of $7,625.00 as payment of the face value of his policy plus interest. The same date, a second draft payable to the Estate of Ernest M. Yokely, beneficiary of Elaine Yokely, deceased, in the amount of $5,083.36 was issued as payment of the face value of Elaine's policy plus interest. On June 28, 1978, Wabash issued a third draft payable to Ernest Yokely, III, administrator of the Estates of Ernest Yokely, deceased and Elaine Yokely, deceased, in the sum of $9,375.00. This amount represented a compromise settlement of the double indemnity provisions of both policies. All of these payments were inventoried as a part of Ernest's estate.

On March 23, 1979, the Probate Division of the Circuit Court of the City of St. Louis revoked the letters of administration issued to Ernest Yokely, III for failure to perform his official duties. On October 5, 1979, appellant McElwee was appointed administrator D.B.N. McElwee promptly paid off the balance of the mortgage on the real estate, $1,000.21, and sold it. The proceeds of this sale, $27,283.09 were added to the estate.

In August, 1980, McElwee filed a petition for Final Settlement. Having received approval of the legal department of the Probate Court, he made distribution to Ernest Yokely, III totalling $11,327.76 which included advancements made to Ernest previously during his term as administrator. The court did not give its approval to the final settlement and held up the order of distribution pending the appointment of guardians for Audrey Clarke, Anesa and April Yokely, who were all minors at the time. Prior to the appointment of a guardian, Audrey Clark attained her majority and, without court order, McElwee distributed $12,010.60 to her on December 4, 1981.

On December 31, 1981, there remained in the estate a sum in excess of $24,000.00

representing the shares due Anesa and April. On that date, plaintiffs, the children of Elaine's first marriage, filed a suit in equity against McElwee, Ernest Yokely, III, Audrey Clarke and Anesa and April Yokely, seeking a declaratory judgment and the imposition of a constructive trust upon the proceeds of the sale of the jointly owned real estate and the proceeds of the life insurance policies. Attorney Charles J. McMullin was appointed guardian ad litem for Anesa and April. After a hearing, the court in its final order ruled in favor of plaintiffs and imposed a constructive trust upon assets belonging to the heirs of Elaine and improperly inventoried as a part of the estate of Ernest Yokely. The court ordered the following distribution to be made:

### DISTRIBUTION OF ASSETS

| Assets | Amount | Plaintiffs | Minor Defendants (Anesa & April) |
|---|---|---|---|
| Life Insurance Policy No. K416028 (Elaine Yokely, Insured) | $ 8,833.36 | $ 6,309.55 (5/7) | $ 2,523.81 (2/7) |
| Buick Regal, or dollar value thereof | $ 3,925.00 | $ 1,401.80 (5/7 of 1/2) | $ 560.70 (2/7 of 1/2) |
| Real Estate | $27,283.09 | $ 9,743.96 (5/7 of 1/2) | $ 3,897.59 (2/7 of 1/2) |
| Interest | $ 6,851.08 | $ 2,192.34 | $ 822.12 |
| Total Share of Assets | $46,917.03 | $19,647.65 | $ 7,804.22 |

### DISTRIBUTION OF EXPENSES

| | Amount | Plaintiffs | Minor Defendants |
|---|---|---|---|
| Payment to Pulaski Savings & Loan for mortgage | $ 1,000.21 | $ 357.21 (5/7 of 1/2) | $ 142.90 (2/7 of 1/2) |

### SUMMARY

| | Plaintiffs | Minor Defendants |
|---|---|---|
| Share of Assets | $19,647.65 | $ 7,804.22 |
| Less Share of Expenses | — 357.21 | — 142.90 |
| Balance to be distributed | $19,290.44 | 7,661.32 |
| | TOTAL | $26,951.76 |

An accounting filed by Administrator McElwee pursuant to the court's order reflected the balance in the estate to be $263.92 short of the total ordered by the court to be distributed to the plaintiffs and to April and Anesa. The trial court found McElwee and Ernest Yokely, III personally liable to the heirs of Elaine for any shortfall. The court further ordered that the guardian ad litem be allowed a fee in the sum of $4,500.00 to be deducted from the $7,661.32 due to an Anesa and April.

McElwee appeals contending the trial court erred in overruling his motion to dismiss based upon the existence of an ade-

quate remedy at law under § 473.340, RSMo.1978, and laches, in ruling that plaintiffs were not liable for a proportionate share of the expenses of probate administration and in holding him personally liable for any shortfall. Anesa and April appeal contending the trial court erred in adopting McElwee's accounting and in ordering the guardian's fee to be paid out of their proportionate share, rather than from the total assets of the estate.

## MCELWEE'S APPEAL

We first address plaintiffs' argument that McElwee's appeal should be dismissed as untimely. This argument stems from the issuance by the trial court of an order on February 14, 1982, which purported to make final for purposes of appeal the court's decision regarding the imposition of the constructive trust while at the same time ordering an accounting of the assets of the estate. Despite the designation of finality, no appeal was taken from this order.

■ Application of Rule 81.06 is expressly limited to situations in which "a separate trial is had before the court without a jury of claims arising out of the same transactions, occurrences or subject matter as the other claims stated or joined in the case ...." No separate trial was held here and therefore the rule has no application. *Daniels v. Richardson*, 665 S.W.2d 76, 77 (Mo.App.1984). Any attempt to appeal from the order of February 14, 1982, would have been premature. No cause of action for accounting was pleaded. The court merely ordered McElwee to file an account of his administration because the testimony was imprecise. Such an order is not a distinct "judicial unit" but rather is merely related to one element of a single claim. Therefore, the designation of finality in the order of February 14, 1982 was a nullity. *Cf. Lipton Realty, Inc. v. St. Louis Housing Authority*, 655 S.W.2d 792, 793 (Mo. App.1983); *Shell v. Shell*, 605 S.W.2d 185, 191 (Mo.App.1980).

■ McElwee's first point charges error in the denial of his motion to dismiss the equitable action seeking declaratory judgment and the imposition of a constructive trust on the grounds that section 473.340, RSMo.1978, *Discovery of Assets; Procedure for,* provided an adequate remedy at law. We disagree. A similar contention was addressed by the Missouri Supreme Court in *Mathews v. Pratt*, 367 S.W.2d 632, 637 (Mo.1963):

> It may be that the Probate Court would have the power to do the same things in a discovery proceeding under the existing Code, contrary to what has so long been declared. We do not so decide here. In such event, however, the probate jurisdiction could only be *concurrent,* for the inherent jurisdiction of our circuit courts to establish, declare and enforce trusts may certainly not be foreclosed by probate jurisdiction or proceedings.

*See also Wallach v. Joseph*, 420 S.W.2d 289, 295 (Mo.1967), *cert. denied*, 389 U.S. 953, 88 S.Ct. 335, 19 L.Ed.2d 362 (1967).

McElwee asserts a two fold argument that plaintiffs' claim was barred by laches: that plaintiffs' action is a claim against the estate of Ernest Yokely and therefore barred after the passage of six months pursuant to § 473.360, RSMo.1980, and that since he and Ernest Yokely, III have made partial distributions, the equitable doctrine of laches should prevent the maintenance of this action.

■ Claims against the estate of a deceased person, as that phrase is used in § 473.360, refers to liabilities of the decedent which survive. *Strumberg v. Mercantile Trust Company*, 367 S.W.2d 535, 538 (Mo.1963). Plaintiffs' cause of action seeks to impose a trust upon assets which are said not to be a part of the estate. It does not seek to enforce a liability of the decedent or to establish a claim which existed against him. A similar contention was denied in *Gilliam v. Hopkins*, 472 S.W.2d 436 (Mo.App.1971), an action to recover assets from an administrator on the grounds that proceeds from the sale of real estate had been wrongfully converted to the use and benefit of the estate. The

court ruled, "The legal situation here is analogous to those cases in which the plaintiffs have sought to recover specific assets in the possession of the personal representative, and plaintiffs were not asserting a claim within the meaning of the non-claim statutes applicable to claims in the probate court." 472 S.W.2d at 446.

 McElwee next contends the plaintiffs' claim is barred by the equitable defense of laches. We disagree. "Invocation of laches requires that a party with knowledge of the facts giving rise to his rights delays assertion of them for an excessive time and the other party suffers legal detriment therefrom." *Lyman v. Walls*, 660 S.W.2d 759, 761 (Mo.App.1983). Mere delay does not of itself constitute laches, the delay must be unreasonable and unexplained and must be shown to have caused disadvantage and prejudice to the defendant. *Metropolitan St. Louis Sewer District v. Zykan*, 495 S.W.2d 643, 656–57 (Mo.1973). Equity does not encourage laches and the doctrine may not be invoked to defeat justice but only to prevent injustice. *Id.* at 652. Applying these principles we find no error on the part of the trial court in denying the affirmative defense of laches.

McElwee contends that he has been prejudiced by reason of the delay in the commencement of the action because of the partial distribution of the assets of the estate made by him and by his predecessor. However, the delay did not cause these distributions to be made. Ernest Yokely, III wrongfully converted property and money of the estate to his own use. McElwee made partial disbursements without waiting for approval of the probate court and without securing a bond as provided for in section 473.613, RSMo.1978. Had he followed the provisions of the statute, he would have suffered no prejudice. "[O]ne whose prejudice is largely self-imposed may not prevail on the affirmative defense

of laches." *Hurst v. U.S. Postal Service*, 586 F.2d 1197, 1200 (8th Cir.1978).

 Moreover, while the exact ages of most of the plaintiffs is not disclosed by the record filed in this court, we note that three of the plaintiffs were minors when the suit was filed and the transcript does show that another attained her majority less than one year prior thereto. Because of the equitable nature of the defense and its purpose of preventing injustice as opposed to defeating justice, the general rule is that laches may not be imputed to minors. *Hagan v. Lantry*, 338 Mo. 161, 89 S.W.2d 522, 528–29 (1935). While the record is anything but clear on this point, it appears as though all of the minor children of Elaine and Ernest lived with various relatives after the tragedy with no one in legal authority to assert their rights. Under the circumstances, to deny the claim of plaintiffs because of laches would work an injustice far outbalancing any prejudice sustained by McElwee as a result of his own premature distribution.

Next McElwee contends the court erred in failing to assess a proportionate share of the expense of administration against plaintiffs. Plaintiffs respond that since the assets were wrongfully inventoried in the first place, it would be inequitable to charge the true owners for the expenses flowing from that improper act. The trial court ruled that plaintiffs were not liable for any part of the cost of acquisition of assets not properly belonging to the estate, nor for probate expenses because they were not making a claim against the estate, nor were they the heirs of Ernest Yokely.[1] We find no error.

 The trial court properly found that one-half of the proceeds realized from the sale of the real estate and one-half of the value of the automobile were improperly inventoried as assets of the estate of Ernest Yokely. When one spouse murders the other spouse, the survivor may not

---

1. The trial court's order listed as an expense the payment of $1,000.21 in discharge of the mortgage on the real estate and charged the heirs of Elaine with a proportionate share thereof.

Rather than an expense, this sum constituted a redemption of equity. Since this payment increased the value of their interest, it was properly charged against them.

become the sole owner of property they held as tenants by the entirety.

> One must not only be a survivor in fact but also in contemplation of law. Indispensable is the prerequisite that decease must be in the ordinary course of events and subject only to the vicissitudes of life. The killer can assert no right to complete ownership as survivor. Equity will not allow him to profit by his own crime.

*Grose v. Holland*, 357 Mo. 874, 211 S.W.2d 464, 466–67 (Mo.1948). Similar to the result of divorce, the murder of one spouse by the other converts a tenancy by the entirety to a tenancy in common by operation of law. *Id.* at 467. Title to an intestate's real property vests directly in his heirs. *Hill v. Morrison*, 436 S.W.2d 255, 256 (Mo.App.1969).[2] No administration of an estate of Elaine Yokely having been commenced within three years of her death, any possible claim against her estate is barred, § 473.360.3, RSMo.1978, and her heirs have an indefeasible right to one-half of the real estate and automobile, or to the value thereof.

 ▪ Similarly, Elaine's heirs are entitled to the proceeds of the insurance policy on her life. A beneficiary of the life insurance policy who murders the insured may not benefit from his wrongdoing by recovering the proceeds of the policy. *Bradley v. Bradley*, 573 S.W.2d 378, 380 (Mo.App.1978). In the absence of contingent beneficiaries, the proceeds of the policy pass to the estate of the insured or, in this case, to the insured's heirs.

 ▪ McElwee does not contest these principles nor their application to the facts of this case. However, in arguing that plaintiffs should share in the cost of administration and the expenses of collecting these sums, he relies on the general rule enunciated in *Leggett v. Missouri State Life Insurance Company*, 342 S.W.2d 833, 936 (Mo. banc 1960), that those who share in the benefits of the "creation, increase or protection" of a fund must contribute their proportionate share of the attorney's fees and expenses attendant thereto. *See also Jourdan v. Gilmore*, 638 S.W.2d 763, 768–69 (Mo.App.1982). McElwee's reliance is misplaced. Neither he nor his predecessor created, increased or protected a fund from which plaintiffs were to benefit. Rather, they appropriated funds and commingled them with the funds of an estate in which plaintiffs had no rights or interests. It would be totally incongruous for a court of equity to charge the cost of such misappropriation against the potential victims thereof.

 ▪ Finally, McElwee contends the court erred in ruling he was directly liable to the heirs of Elaine for any shortfall in the assets of the estate. Arguing that he had no knowledge of the plaintiffs' claim to assets of the estate at the time he made the partial distribution, he did not breach any obligation of faithful administration of the estate. His lack of knowledge is irrelevant. Personal liability was imposed upon an administrator to the extent of a partial distribution made without court order even though the administrator was unaware of the existence of an adopted son who claimed to be and was subsequently found to be solely entitled to the assets of an estate in *In re Carlin's Estate*, 226 Mo. App. 622, 47 S.W.2d 213, 215 (1931). The court there stated that even if the distribution had been made upon verbal direction of the probate judge, in the absence of a court order authorizing the premature payment, the administrator was guilty of a breach of trust for which he was personally accountable. *Id.*

Moreover, that partial distribution is to be made by an administrator only upon order of court, is clearly established by section 473.613.1, RSMo.1978. Subsection 3 of this statute provides:

> Before partial distribution is made, the court, upon the request of the executor or administrator, shall require that secur-

---

**2.** Since plaintiffs are content to seek only recovery of their share of the proceeds of the sale, we do not address the validity of the title acquired by the purchaser of the real estate through the administrator's sale. *But see Clapper v. Chandler*, 406 S.W.2d 114, 121 (Mo.App.1966).

ity be given for the return of the property so distributed to the extent necessary to satisfy the interest of any distributee, or claimant prejudiced by the distribution. If partial distribution is made without such request for security, the executor or administrator and his sureties are liable for any loss or damage sustained by any interested party as a result thereof.

Therefore, even if the distribution had been made pursuant to court order as required by the statute, the failure to require security for the return of the property distributed creates personal liability for any loss suffered by plaintiffs, who are certainly interested parties.

### APPEAL OF APRIL AND ANESA

On behalf of the minor defendants, their guardian ad litem has filed a cross-appeal. The first point asserted therein is as follows:

> The trial court erred in adopting the accounting of estate's assets prepared by defendant-administrator McElwee. Same grossly understated total estate assets. As a result, the trial court erroneously awarded too small an amount of estate assets to the minor defendants herein. The accounting prepared by the guardian ad litem accurately reflects the total estate assets and the proportionate shares which the trial court should have awarded. The court should have adopted same.

■ It is obvious that this point relied on totally fails to comply with the requirements of Rule 84.04(d) by failing to state "wherein and why" the rulings of the trial court are claimed to be erroneous. Nor does the argument in the brief shed much light upon the basis for this claim of error. It appears as though the guardian is challenging McElwee's statement of "the total available assets of the Yokely estate...." This estate and its administration are not at issue in this case, but rather, are pending before the Probate Division of the Circuit Court. Attached to the guardian's brief as an exhibit is an "Accounting Prepared by Guardian ad litem" which purports to reflect the percentages and amounts that each plaintiff and defendant is entitled to receive from the estate. The manner in which such calculations were made is not explained in the brief and their basis is completely unfathomable. Point I of the guardian ad litem's cross-appeal is dismissed.

■ The second point asserts that the guardian's fee should be paid from the total estate rather than from the share of the minor defendants because the guardian's efforts benefited the entire estate. This "benefit" is said to be the establishing that McElwee made improper distributions in the amount of $11,135.78.[3] Once again, the guardian has confused the issues before the trial court in this case and those before the probate division. The trial court correctly recognized in its final order that it was without jurisdiction to determine any issues regarding the probate of the estate of Ernest Yokely and limited its judgment to the imposition of a constructive trust upon that portion of the assets inventoried in the estate which properly belonged to the heirs of Elaine Yokely. Nowhere does the guardian point to anything he did which affected the value or the distribution of the subject matter of this equitable action. Therefore, his argument based upon cases authorizing the assessment of fees against an estate where the services of an attorney or guardian have benefited the entire estate, rather than the client or ward alone, are inappropriate. This point is without merit.

However, the assertion of this point on appeal brings before us the subject of the fees allowed to the guardian ad litem to be paid from the shares of his wards. We are also mindful of the continuing charge that courts must be particularly solicitous for the protection of the interest of minors.

**3.** In the brief, this sum is said to consist of a payment of $5,939.01 to Audrey Clarke and $5,196.77 to Ernest Yokely, III, which sums are claimed to be in excess of the amounts to which they are entitled. The basis of these computations is unexplained.

*Peoples-Home Life Insurance Company v. Haake*, 604 S.W.2d 1, 6 (Mo.App.1980). Spurred by this mandate, we address the matter of the $4500.00 fee ordered to be paid to the guardian ad litem from the $7,661.32 judgment in favor of the minor defendants. Since the guardian who is to receive the fee and the attorney representing the minor defendants are one in the same, it is not surprising that no direct challenge to the amount of this allowance has been presented to us. Nevertheless, because of our concern for the interests of the children, we have searched the record in an effort to determine what justification may be found for the allowance of a fee amounting to almost 60% of the judgment. We find none and conclude the allowance of such a generous fee was an abuse of discretion.

Evelyn Williams, Elaine's sister, and her husband had been appointed guardians of the children in the State of Illinois. They chose not to serve as guardians ad litem for them in this litigation as they also had custody of certain minor plaintiffs and therefore a conflict existed. Mr. McMullin was appointed solely for the purpose of this litigation and therefore, although he served under the dual title of both guardian and attorney, it is the latter capacity which must be evaluated in determining reasonable compensation. Nothing in the record before us indicates the basis upon which the trial court arrived at the figure of $4500.00.

The elements which should be considered by trial courts in determining the reasonableness of attorney's fees are set forth in *Murphy v. Grisham*, 625 S.W.2d 215, 217 (Mo.App.1981):

> In determining the reasonable value of legal services, the time taken is one element to consider but it may be of minor importance; other considerations are the nature, character and amount of the services rendered, the nature and importance of the litigation or business in

which the services are rendered, the degree of responsibility imposed on or incurred by the attorney, the amount of money or the value of the property involved, the degree of professional ability, skill and experience called for and used and the result produced. *Scott v. Home Mutual Telephone Company*, 510 S.W.2d 793, 795 (Mo.App.1974). *See also* Rule 4, D.R. 2–106.

The principle enunciated in *Murphy* was followed in *Kays v. Curtis*, 648 S.W.2d 901 (Mo.App.1983), a case involving fees allowed to a guardian ad litem as well as attorney's fees. Noting the simplicity of the issues presented, the court in *Kays* discounted the extensive pre-trial discovery. 648 S.W.2d at 904. As to the services of the guardian, his attendance at trial without participation was noted. *Id.* The court, in effect, ruled that time alone was not the measure of the reasonableness of allowable fees.

■ Here, the underlying legal issue of a murderer's inability to benefit from the death of his victim is so well established as to be axiomatic. Counsel for the administrator conceded this issue and attempted to assert affirmative defenses. The issues asserted by the guardian in the trial court and here were directed to the administration of the estate of Ernest Yokely, a subject not before the court. His participation in the trial consisted principally in asking the Illinois guardians of his wards whether or not they knew he was entitled to a fee for his services.[4] No extraordinary skill or responsibility was required as the interests of his wards would inescapably fall in line with the position espoused by either plaintiffs or McElwee, both adequately represented. Finally, although we consider this factor of lesser importance, he lost the case.

We agree with the observation of the Honorable Donald B. Clark in his concurring opinion in *Kays*: "If, however, counsel

---

**4.** The guardian filed a motion in the probate division asking payment of his fee from the estate of Ernest Yokely. This was denied on jurisdictional grounds. He also filed a motion

in this court seeking an additional fee of $2,500.00 for services on appeal. This motion was denied.

continue to participate and encourage improvident contentiousness in litigation and if the courts reward that endeavor by fees such as are involved here, the practice will continue and the profession and the judiciary will be diminished accordingly." 648 S.W.2d at 905. In that case, it was held an abuse of discretion to award a guardian ad litem $1,966.32 after a two day trial to be paid by a party with an income of at least $180,000.00 per year. Such an abuse is glaringly more evident here where the modest sum to be recovered by the children after less than a one day trial is reduced by almost 60% for services that were more obfuscatory than valuable. We find that the allowance of a fee to the guardian ad litem in the sum of $1500.00 is reasonable and proper.

## MODIFICATION OF JUDGMENT

Where possible we are required by Rule 84.14 to finally dispose of the case and to "give such judgment as the court ought to give." Accordingly, we modify the judgment of the trial court in two respects.

First, although the body of the court's order clearly shows that the imposition of the constructive trust was intended to trace the funds prematurely advanced to Audrey Clarke and Ernest Yokely, III from the probate estate, the final paragraph ordered judgment to be entered against McElwee alone. This should be clarified, so that McElwee is personally liable, along with Audrey Clarke and Ernest Yokely, III, only for the shortfall occasioned by the failure of the assets in Ernest's estate to satisfy the judgment.

Second, the computations made in the order for distribution of assets contain arithmetical errors. A corrected version is set forth below:

### DISTRIBUTION OF ASSETS

| Assets | Amount | Plaintiffs | Minor Defendants (Anesa & April) |
|---|---|---|---|
| Life Insurance Policy No. K416028 (Elaine Yokely, Insured) | $ 8,833.36 | $ 6,309.54 (5/7) | $ 2,523.81 (2/7) |
| Buick Regal, or dollar value thereof | $ 3,925.00 | $ 1,401.79 (5/7 of 1/2) | $ 560.71 (2/7 of 1/2) |
| Real Estate | $27,283.09 | $ 9,743.96 (5/7 of 1/2) | $ 3,897.58 (2/7 of 1/2) |
| Interest | $ 6,851.08 | $ 2,446.81 (5/7 of 1/2) | $ 978.73 (2/7 of 1/2) |
| Total Share of Assets | $46,892.53 | $19,902.10 | $ 7,960.83 |

### DISTRIBUTION OF EXPENSES

| | Amount | Plaintiffs | Minor Defendants |
|---|---|---|---|
| Payment to Pulaski Savings & Loan for mortgage | $ 1,000.21 | $ 357.21 (5/7 of 1/2) | $ 142.88 (2/7 of 1/2) |

### SUMMARY

| | Plaintiffs | Minor Defendants |
|---|---|---|
| Share of Assets | $19,902.10 | $ 7,960.83 |
| Less Share of Expenses | – 357.21 | – 142.88 |
| Balance to be distributed | $19,544.89 | 7,817.95 |
| | TOTAL | $27,362.84 |

The judgment is affirmed as modified except as to the allowance of the fee to the guardian ad litem which is reduced to the sum of $1,500.00. The cause is remanded with directions to enter judgment accordingly.

SMITH and STEPHAN, JJ., concur.