**Romeo PEREZ, M.D., Appellant,**

v.

**The MISSOURI STATE BOARD OF REGISTRATION FOR THE HEALING ARTS, and its members, J. Michael Conoyer, M.D., Mary Bruns, D.O., Frank Clark, M.D., Darrell Domann, M.D., Clemens Haggerty, D.O., William Ketcherside, M.D., Patricia Kemp, David Wilkinson, M.D., and James B. Deutsch, Commissioner of The Missouri Administrative Hearing Commission, Respondents.**

**No. WD 43248.**

Missouri Court of Appeals,
Western District.

Jan. 29, 1991.

Richard Albert Oertli, St. Louis, for appellant.

Johnny K. Richardson, Jefferson City, for respondents.

Before BERREY, P.J., and FENNER and ULRICH, JJ.

FENNER, Judge.

Appellant, Romeo Perez, M.D., (Dr. Perez) appeals from a judgment of the circuit court affirming a decision of the Missouri Administrative Hearing Commission (Commission) and the subsequent order of the Missouri State Board of Registration for the Healing Arts (Board) suspending his medical license for a period of two months followed by five years of probation.

■ For purposes of judicial review, the decision of the Commission and disciplinary order of the Board are treated as one decision and as the final decision of the Commission subject to review. *State Board of Registration for the Healing Arts v. Masters*, 512 S.W.2d 150, 159 (Mo. App.1974). Upon review, the evidence and all reasonable inferences therefrom are to be viewed in the light most favorable to the findings and decision. *Id.* at 157–58. With this standard of review in mind, the evidence was as stated hereafter.

Dr. Perez is a licensed and Board certified obstetrician and gynecologist with a sub-specialty in reproductive endocrinology or infertility. Dr. Perez's license was suspended as a result of a sexual relationship that he had with a patient of his referred to herein as Mrs. F.

Mrs. F. was married in 1973. She and her husband desired to have a child, and she tried for several years to become preg-

nant without success. Prior to seeing Dr. Perez for medical care, Mrs. F. had sought treatment from another physician for her infertility. She had become emotionally drained due to her inability to become pregnant. The efforts she had engaged in to deal with her infertility were causing stress in her life and her marriage. Her infertility affected her self-image and she did not feel complete as a woman.

Mrs. F. made efforts to gain more information about infertility and she became aware of a national organization for infertile people called Resolve. She became involved with starting a Resolve Chapter in St. Louis. One of the individuals interested in starting a St. Louis Resolve Chapter contacted Dr. Perez to help with the Chapter.

During a luncheon with Dr. Perez and another person regarding the beginning of a Resolve Chapter, Mrs. F. asked Dr. Perez if he would take her as a patient. Dr. Perez agreed to accept her as a patient and she made her first appointment with him in January or February of 1980.

Mrs. F. went to Dr. Perez solely for medical treatment and there was no sexual relationship between them before the beginning of their physician-patient relationship. The physician-patient relationship lasted from January or February of 1980 until the fall of 1985.

Mrs. F. discussed her infertility problems with Dr. Perez and told him that she was emotionally drained and frustrated as a result of her problems. She told him that her self-concept was low and that she did not feel complete as a woman. Dr. Perez strongly encouraged her to talk to him about her personal feelings and she became dependent on him emotionally. Dr. Perez gave her his personal phone number telling her to call him when she felt troubled or depressed.

Dr. Perez began artificial insemination treatments on Mrs. F. in June of 1980. During these treatments and related office visits, Dr. Perez made sexual advances toward Mrs. F.

Mrs. F. and Dr. Perez began to talk on almost a daily basis. He would call her often from outside the operating room while he waited to go into surgery. When she would begin to cry in his office, Dr. Perez would come and sit by Mrs. F. and hold her.

Dr. Perez and Mrs. F. had sexual intercourse, for the first time, in the summer of 1980, in the doctor's private office at Missouri Baptist Hospital. She had gone to him for medical advice on the day that this occurred.

From the summer of 1980 until the end of that year, Dr. Perez engaged in sexual intercourse with Mrs. F. approximately once every three weeks in his private office. On each of these occasions Mrs. F. had seen Dr. Perez for medical treatment. When she would go into his private office, sometimes following an examination, she would usually be crying and upset about not being able to become pregnant. He would provide liquor for her, comfort her and engage in sexual relations.

On two occasions in 1980, Dr. Perez took Mrs. F. to a hotel for the purpose of engaging in sexual intercourse. Their last sexual encounter was at the Sunset Ranch Motel after Mrs. F. had seen Dr. Perez for medical advice on September 4, 1981.

Mrs. F. became pregnant in 1981 and no longer sought treatment from Dr. Perez for infertility. However, she continued her physician-patient relationship with Dr. Perez through 1986 for medical matters not associated with insemination. During this whole time, Dr. Perez never suggested that the physician-patient relationship be terminated. Mrs. F. terminated the relationship in October of 1986. Mrs. F. filed her complaint with the Board on May 20, 1987.

In his first point on appeal, Dr. Perez argues that the Commission erred in concluding that cause had been established for disciplining him pursuant to § 334.100.1(10), RSMo 1978[1], because: 1)

---

1. All statutory references are to RSMo 1978, unless otherwise specifically stated. Section 620.105, RSMo 1986, states that occurrences for

which disciplinary proceedings are pursued, that take place before September 28, 1981, must be prosecuted under the law in effect before

there was no expert testimony on the appropriate professional or ethical standards governing his conduct, and 2) even if expert testimony was not required, there was not substantial and competent evidence to establish that his conduct violated § 334.100.1(10).

Section 334.100.1(10) provides that the Board can undertake disciplinary proceedings against a physician for "engaging in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public."

■ Dr. Perez argues first that § 334.100.1(10) requires expert testimony to instruct the trier of fact as to the applicable ethical and professional standards within the medical community.

Experts are permitted to give their opinions, for the purpose of aiding the court or jury, when a fair and intelligent opinion cannot be drawn from the facts by inexperienced persons. *Siebern v. Missouri–Illinois Tractor & Equipment Co.*, 711 S.W.2d 935, 938 (Mo.App.1986). The necessity for admission of expert testimony in a given situation rests in the first instance in the sound discretion of the trial court, and its decision is not to be set aside in the absence of a showing of an abuse of discretion. *Yocum v. Kansas City Public Service Company*, 349 S.W.2d 860, 864 (Mo. 1961).

In *Hughes v. State Board of Health*, 348 Mo. 1236, 159 S.W.2d 277 (1942), the Missouri Supreme Court examined § 9990, R.S. 1939, a predecessor statute with language similar to § 334.100.1(10). Section 9990, R.S.1939, provided that the licensing agency for physicians at the time, could "refuse to license individuals of bad moral character, or persons guilty of unprofessional or dishonorable conduct." The court held that any conduct which by common opinion and fair judgment is determined to be unprofessional or dishonorable, may constitute grounds for revocation. *Id.* 159 S.W.2d at 278.

It was not necessary for the Commission to receive expert testimony. The facts presented herein were sufficient to allow inexperienced persons to draw a fair and intelligent opinion on whether Dr. Perez engaged in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public.

Dr. Perez's argument that expert testimony was required is denied.

■ Dr. Perez argues further under his first point that the Commission's decision was not supported by competent and substantial evidence. Dr. Perez could prevail on this argument only if the Commission's decision was clearly contrary to the overwhelming weight of the evidence viewed in its entirety, with all inferences which may be reasonably drawn from the evidence, viewed in the light most favorable to the decision. *State Board of Registration for the Healing Arts v. Masters*, 512 S.W.2d at 157–58.

Dr. Perez argues that there was no evidence to show that he engaged in unethical or unprofessional conduct or that his conduct was likely to harm the public. He claims his affair with Mrs. F. was consensual and that she was a willing participant. He complains again of a lack of expert testimony and alleges that the Commission's decision was based solely on the self-serving testimony of Mrs. F. These arguments are all without merit.

In regard to the complaint of Mrs. F.'s testimony being self serving, it is elementary that the assessment of credibility of witnesses is a matter for the board hearing the testimony, and on review an appellate court must defer to its findings in that regard. *Ross v. Robb*, 662 S.W.2d 257, 260 (Mo. banc 1983).

Dr. Perez's complaint that there was not substantial and competent evidence to show a violation of the statute is contrary to the record. The evidence reflects an effort on Dr. Perez's part to take advantage of a patient whom he knew to be emotionally troubled and vulnerable. He gained her confidence by virtue of their physician-patient relationship and then

*1981.* Therefore, Section 334.100.1(10), RSMo 1978, is the effective statute in this proceeding.

abused the trust that she placed in him by taking advantage of her sexually.

In his second full point, Dr. Perez argues that § 334.100.1(10) as applied by the Commission is unconstitutionally vague and overbroad. Thus, Dr. Perez argues his rights to due process under the Fourteenth Amendment of the United States Constitution and Article I, Section 10 of the Missouri Constitution were denied. Dr. Perez does not challenge the facial validity of the statute.

Statutes are presumed to be constitutional and will be held otherwise only if they clearly contravene some constitutional provision; doubts are to be resolved in favor of validity. *State v. Young*, 695 S.W.2d 882, 883 (Mo. banc 1985). Due process requires that a statute prohibiting certain activity provide 1) reasonable notice of the proscribed activity and 2) guidelines so that the governmental entity responsible for enforcing the statute may do so in a nonarbitrary, nondiscriminatory fashion. *City of Festus v. Werner*, 656 S.W.2d 286, 287 (Mo.App.1983). On a challenge to a statute as being unconstitutionally vague, the language is to be treated by applying it to the facts at hand. *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 233 (Mo. banc 1982).

The statute in question is a disciplinary statute which has as its purpose the protection of the public, and as such, is remedial rather than penal. *Younge v. State Board of Registration for the Healing Arts*, 451 S.W.2d 346, 349 (Mo.1969), *cert. denied*, 397 U.S. 922, 90 S.Ct. 910, 25 L.Ed.2d 102 (1970). Remedial statutes are to be construed to meet the cases which are clearly within the spirit or reason of the law, or within the evil the statute was designed to remedy, provided such interpretation is not inconsistent with the language used with all reasonable doubts resolved in favor of applicability of the statute to the particular case. *State ex rel. LeFevre v. Stubbs*, 642 S.W.2d 103, 106 (Mo. banc 1982).

Dr. Perez clearly engaged in dishonorable, unethical and unprofessional conduct of a character likely to harm the public.

Section 334.100.1(10) was not applied in an arbitrary or discriminatory fashion under the facts herein.

In his third point, Dr. Perez argues that he was denied a fair hearing because the Commission allowed the Board to amend its complaint on the day of the hearing.

The Board's original complaint was filed on March 30, 1988, alleging that Dr. Perez had engaged in sexual relations with his patient Mrs. F., and charging a statutory violation of § 334.100.2(5), RSMo 1986, for "incompetency, misconduct, gross negligence, fraud, misrepresentation or dishonesty in the performance of the functions or duties of any profession licensed or regulated by this chapter." On the day of the Commission's hearing, June 1, 1988, the Board requested leave to file its First Amended Complaint, alleging the same conduct of Dr. Perez, but charging the violation under § 334.100.1(10), RSMo 1978, for "dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public."

Dr. Perez objected to the Board being granted leave to file its First Amended Petition, but he did not request a continuance or ask for any further relief. Dr. Perez now claims that he was prejudiced by the amendment.

Leave to file an amended complaint in a licensing dispute is discretionary with the commission pursuant to 1 CSR 152.-050(2)(A). The decision of the Commission should not be reversed unless there is an obvious and palpable abuse of such discretion. *See, Fisher v. McIlroy*, 739 S.W.2d 577, 580 (Mo.App.1987).

The factual allegations of the Board's complaint were not changed by their amended complaint. The only change was in the statute to be applied to Dr. Perez's conduct. The Commission's allowing the filing of the amended complaint did not prejudice Dr. Perez. There was no abuse of discretion.

In his final point, Dr. Perez argues that the Board's complaint was barred by the doctrine of laches.

 Invocation of the doctrine of laches requires that a party with knowledge of the facts giving rise to his rights delays assertion of them for an excessive time and the other party suffers legal detriment therefrom. *Lyman v. Walls*, 660 S.W.2d 759, 761 (Mo.App.1983). Mere delay does not of itself constitute laches, the delay must be unreasonable and unexplained and must be shown to have caused disadvantage and prejudice to the defendant. *Higgins v. McElwee*, 680 S.W.2d 335, 341 (Mo.App.1984). Prejudice which supports laches can only fall into one or the other of two categories: (1) loss of evidence which would support the position of one seeking to invoke laches with regard to the claim he is called upon to defend against, and (2) a change of position by one seeking to invoke laches in a way that would not have occurred, but for the delay. *Kimble v. Worth County R–III Board of Education*, 669 S.W.2d 949, 954 (Mo.App. 1984); *cert. denied* 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 268 (1984). Equity does not encourage laches and the doctrine may not be invoked to defeat justice but only to prevent injustice. *Higgins v. McElwee*, 680 S.W.2d at 341.

 Dr. Perez argues that the delay from the time his affair with Mrs. F. ended in 1981, to the time the complaint was filed against him in 1988, affected his ability to defend himself. Dr. Perez alleges that the delay caused him to lose evidence which would have allowed him to refute testimony of Mrs. F. that he scheduled her appointments at the end of the day so that no office staff or other patients would be present. Dr. Perez says that his appointment books for 1980 and 1981 had been discarded and that he was not able to locate his office staff from that time.

This issue is only significant as it goes to the credibility of Dr. Perez and Mrs. F. The time of day at which the sexual encounters took place was not of crucial importance. Dr. Perez admitted that it was not unusual for him to set late or weekend office appointments. The only real dispute was whether the sexual encounters took place in his office as Mrs. F. testified or

away from the office as Dr. Perez testified. Neither of the parties claim that there were any witnesses to their sexual encounters.

The commission had ample opportunity to judge the credibility of the witnesses from the evidence heard. The evidence is sufficient to show a statutory violation by Dr. Perez regardless of where the sexual encounters took place. Dr. Perez has not shown prejudice from this alleged lack of evidence and justice would not be served by invoking the doctrine of laches.

Judgment affirmed.

All concur.