**Charles Lafayette EWING, Respondent,**

v.

**Beverly Joyce EWING, Appellant.**

**No. WD 50024.**

Missouri Court of Appeals,
Western District.

June 27, 1995.

Rehearing Denied Aug. 1, 1995.

James P. Moroney, Kansas City, for appellant.

Jeffrey S. Eastman, Gladstone, for respondent.

Before HANNA, P.J., and BERREY and SPINDEN, JJ.

BERREY, Judge.

Appellant Beverly Ewing (Beverly) appeals from a decree of dissolution in which respondent Charles Ewing (Charles) was awarded all of the proceeds of his retirement plan. The trial court determined that the retirement proceeds were marital property but that Beverly's claim to a portion thereof was barred by the doctrine of laches. Beverly alleges two points of error. First, she argues that the doctrine of laches is inapplicable to the case at bar, and secondly, she argues that the trial court abused its discretion in failing to award 50% of Charles' retirement proceeds to her.

Beverly and Charles were married in November 1964, and six children were born of the marriage. The parties voluntarily separated in May 1973, and continued to live separate and apart ever since. Charles went to live with his mother, and the couple agreed that the children would remain in the care, custody and control of Beverly. At that time, the eldest child was 12 years of age and the youngest child was five years of age.

No legal proceeding as to the custody or support of the minor children was ever initiated. Commencing in early 1975 and ending in late 1988, Charles voluntarily made bi-weekly payments of roughly $100.00–$150.00 per month to Beverly, intended to assist her in supporting the parties' six children. Beverly accepted each installment and never asked for more. From the time of marital separation until emancipation of the minor children, Charles paid a total of approximately $20,725.00 for support of the minor children. It is undisputed that aside from the nominal monthly payments provided by Charles, Beverly alone assumed the role of caring for the parties' six children and their rental apartment. Charles testified that he maintained contact with the children. He admitted on cross-examination that he rarely went to visit the children although they would sometimes come to visit him. He also testified that he could not remember buying the children clothes, birthday presents or school items although he would sometimes

give them money for these events. At the time of trial, two of the children were deceased and each of the four remaining children was emancipated.

At the time of separation in 1973, Charles was unemployed. Beverly was then working for the City of Kansas City, Missouri where she remained employed until May 1986, at which time she received a retirement payment of $8,417.32. None of Beverly's retirement proceeds were shared with Charles. Instead, the proceeds were used to pay off a loan Beverly owed to the credit union for the children's necessities, and a net balance of approximately $6,000.00 was paid to her. Beverly testified that she used the $6,000.00 for support of the parties' children.

In February 1975, approximately two years after the voluntary separation, Charles began working for the City of Kansas City, Missouri. Charles continued employment with the City for 18 years before accepting an early retirement incentive in October 1993. After considering several alternative benefit packages available to him, Charles selected the offering that provided him with an additional lump sum benefit of $15,000.00 for a total vested retirement package of approximately $32,552.00. This sum represents a cash bonus of $15,000.00 and monthly retirement payments of approximately $423.22, gross. From this amount, Charles will pay medical insurance costs of $163.47 per month, and he testified at trial that he will receive monthly Social Security benefits of $635.00 beginning in 1994.

On August 13, 1993, Charles filed his petition for dissolution of marriage, alleging there was no marital property to be divided. On September 15, 1993, Beverly filed her answer and cross-petition for dissolution wherein she claimed Charles' retirement benefits were marital property requiring just division. Charles' reply admitted the existence of the retirement plan as marital property and requested its fair and equitable division. Trial was held on May 20, 1994, and the trial court entered its decree of dissolution on August 10, 1994, awarding Charles all of the proceeds of his retirement plan. This appeal followed.

At the time of trial, Charles was 61 years of age and in good health; he had no plans to seek re-employment. Beverly was 57 years of age at the time of trial and gainfully employed, earning $9.00 per hour. Beverly's employer provided life insurance, medical benefits and a profit sharing plan, and her expenses were roughly equal to her net income.

■ Our review of this court-tried case is governed by Rule 73.01. We must defer to the trial court's judgment unless 1) there is no substantial evidence to support it, 2) it is against the weight of the evidence, 3) it erroneously declares the law, or 4) it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). While the Dissolution of Marriage Act grants the division of marital property to the sound discretion of the trial court, awards may be set aside if an abuse of discretion is shown. *Dardick v. Dardick,* 670 S.W.2d 865, 868 (Mo. banc 1984) (citing *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 64 (Mo. banc 1983)). We will presume the correctness of the division of marital property, and the party challenging the division bears the burden of overcoming the presumption. *Ray v. Ray,* 877 S.W.2d 648, 651 (Mo.App.1994).

■ In her first point, Beverly argues that application of the doctrine of laches to the case at bar is against public policy. She contends that the sanctity of marriage and the state's interest in preserving marriages would be replaced with judicial legislation providing that an unspecified number of years of marital separation is the equivalent of a dissolution of marriage proceeding. She also suggests that she is no more chargeable with undue delay in initiating dissolution of marriage proceedings than is Charles. Charles responds that laches appropriately applies because the trial court did not find it applicable to bar the commencement of the statutory divorce action but rather applicable only to bar Beverly's claim to the retirement benefits of Charles. Because we hold that the doctrine of laches is inapplicable to the instant case, we do not address Beverly's related subpoint that laches is an affirmative defense that Charles waived by his failure to specifically plead, nor do we directly address

her subpoint that the trial court's ruling impermissibly redefines "marital property."

■ Laches is the neglect for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. *In re Estate of Remmele,* 853 S.W.2d 476, 480 (Mo. App.1993) (citing *Metropolitan St. Louis Sewer Dist. v. Zykan,* 495 S.W.2d 643, 656–57 (Mo.1973)). Mere delay in asserting a right does not of itself constitute laches; the delay involved must work to the disadvantage and prejudice of the defendant. *Id.*

In the case at bar, the trial court found that Beverly was fully aware of Charles' whereabouts and employment during the period of separation and could have sought additional financial assistance during this period or could have secured a dissolution of marriage and division of marital assets and liabilities then existing. For this reason, the court found Beverly's claim to a portion of Charles' retirement benefits barred by the doctrine of laches.

■ Section 452.330.3, RSMo.1994, provides that "[a]ll property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property ..." Thus, the trial court correctly held that Charles' retirement proceeds are marital property subject to equitable division. Section 452.330.1, RSMo.1994. While the trial court undoubtedly had in mind the unusual circumstance of the parties 20–plus years of voluntary separation, we find no Missouri case law to support its application of laches to the instant proceeding.

In *Grieshaber v. Grieshaber,* 793 S.W.2d 161, 163 (Mo.App.1990), the plaintiff-wife failed to file a petition to divide her husband's pension, despite an awareness of its existence, until 14 years after the dissolution of marriage had been entered. In the interim, her husband died so that he could not explain why the pension had not been divided in the original dissolution suit. The court held the wife's petition barred by the doctrine of laches. *Id.*

The instant case is distinguishable, however. Here, neither party commenced dissolution proceedings for 20–plus years following their voluntary separation. Both parties are still living, and the record is silent as to why Beverly did not earlier seek dissolution while Charles admitted that he has "no idea" why he did not earlier file for divorce. Beverly could have lacked the necessary funds or been desirous of avoiding disruption to the six children born of the marriage, or perhaps she hoped for reconciliation—we can only speculate. Unlike *Grieshaber, supra,* and subsequent cases which have applied laches to post-dissolution suits in equity, there was no final legal decree in this matter. Here, Beverly had no duty to seek a dissolution and accounting during the parties lengthy separation.

In *Higgins v. McElwee,* 680 S.W.2d 335 (Mo.App.1984), the Eastern District reviewed the requirements of invoking the doctrine of laches. There it was held that "[i]nvocation of laches requires that a party with knowledge of the facts giving rise to his rights delays assertion of them for an excessive time and the other party suffers legal detriment therefrom." *Id.* at 341 (quoting *Lyman v. Walls,* 660 S.W.2d 759, 761 (Mo. App.1983)). As noted above, "[m]ere delay does not of itself constitute laches, the delay must be unreasonable and unexplained and must be shown to have caused disadvantage and prejudice to the defendant." *Higgins,* 680 S.W.2d at 341 (quoting *Metropolitan St. Louis Sewer Dist. v. Zykan,* 495 S.W.2d 643, 656–57 (Mo. banc 1973)). Certainly, Beverly was not required to file for divorce! Further, "[e]quity does not encourage laches and the doctrine may not be invoked to defeat justice but only to prevent injustice." *Higgins,* 680 S.W.2d at 341.

In the case at bar, Beverly's entitlement to a just division of Charles' retirement benefits did not arise until legal proceedings for dissolution commenced. Section 452.330.1, RSMo.1994. Just as Beverly could have instituted such proceedings earlier in time, so too could have Charles. "One whose prejudice is largely self-imposed may not prevail on the affirmative defense of laches." *Higgins,* 680 S.W.2d at 341 (quoting *Hurst v.*

*U.S. Postal Service,* 586 F.2d 1197, 1200 (8th Cir.1978)).

To deny Beverly's claim because of laches would work an injustice in excess of any prejudice suffered by Charles as a result of the parties mutual delay in seeking divorce. Charles retirement plan constitutes almost the entirety of marital property, and Beverly has no separate property set aside to her. (The trial court's decree did, however, grant Beverly marital property consisting of household furnishings, approximately $50.00 in bank accounts, $30,000.00 life insurance with no cash value, and an unvested profit sharing plan provided by her current employer.) By contrast, Charles is the joint owner of a home (with his elderly mother) with no mortgage obligation. Beverly, on the other hand, has rental obligations to meet for the apartment where she has lived since the parties voluntary separation. Missouri's public policy does not permit us to force divorces. Each of the spouses in the present action took a risk, and neither should be charged with the delay in filing for divorce. There is nothing in the record to suggest that Beverly told Charles that she was waiving any claim to marital assets.

Having decided that the doctrine of laches does not apply to the present case, we proceed to appellant's second point in an effort to finally dispose of this matter. Rule 84.14; *Meservey v. Meservey,* 841 S.W.2d 240, 247 (Mo.App.1992). For her second point, Beverly claims the trial court abused its discretion by refusing to award her 50% of Charles' retirement proceeds. She asserts that consideration of the factors enumerated in § 452.330.1, RSMo.1994, dictates an equal division of the proceeds.

Section 452.330.1, RSMo.1994, directs that:

1. In a proceeding for dissolution of the marriage or legal separation, ... the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, ...;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

As noted, pension or retirement benefits are marital property subject to equitable division if acquired during the marriage. *Hudson v. Hudson,* 865 S.W.2d 405, 407 (Mo.App.1993). Equal division is not required, but only a fair division. *Mehra v. Mehra,* 819 S.W.2d 351, 357 (Mo. banc 1991). The division of marital property should reflect the concept that marriage is a shared enterprise to reflect the guiding principles inherent in § 452.300. *Meservey,* 841 S.W.2d at 247.

In the instant action, the economic circumstances of the parties are such that Charles enjoys living quarters at no monthly expense other than shared utility costs.[1] In addition to his monthly retirement payment of $423.22, Charles was eligible for $635.00 in Social Security benefits commencing in 1994. Beverly earns $9.00 per hour and must pay monthly rental charges for her apartment. Although Charles' employment service provided the substantial contribution to the acquisition of his retirement proceeds, Beverly contributed all the homemaking efforts and alone reared their six children. The services of a homemaker cannot be ignored in analyzing each spouse's contribution to acquisition of marital assets. Section 452.330.1(2); *Turley v. Turley,* 640 S.W.2d 473, 476 (Mo.App. 1982); *Corder v. Corder,* 546 S.W.2d 798, 803–04 (Mo.App.1977). There was essentially no separate property to set aside to either party, and all the children are now emancipated. Consideration of the statutory factors leads us to conclude that Beverly is entitled to one-half of Charles' retirement proceeds. In so ruling, we need not directly address Beverly's subpoint that the trial court improperly valued the marital property as of the date of separation rather than the date of trial.

The matter is reversed and remanded for entry of an order consistent with this opinion. Upon remand, the trial court must also make a determination as to the just division of Beverly's unvested profit sharing plan provided by her current employer as well as Charles' joint interest in his mother's home.

All concur.

---

1. Charles testified that his mother recently added his name to the title of her home and that the value of the home he shares with his mother is $5,000.00. He also testified that he has financed recent roof repairs worth $6,000.00 and that annual taxes on the home are approximately $155.00.