Arthur L. CASEY, M.D., Respondent,

v.

STATE BOARD OF REGISTRATION FOR the HEALING ARTS, Appellant.

No. 60339.

Missouri Court of Appeals, Eastern District, Division Four.

April 14, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 12, 1992.

Application to Transfer Denied June 30 1992.

William L. Webster, Atty. Gen., William J. Bryan, Asst. Atty. Gen., Jefferson City, for appellant.

David L. Campbell, John J. Campbell, Campbell & Campbell, St. Louis, for respondent.

SMITH, Presiding Judge.

The State Board of Registration for the Healing Arts (Board) appeals from the judgment of the trial court reversing discipline by the Board of Dr. Arthur Casey following a finding by the Administrative Hearing Commission of cause to discipline Casey. The discipline was based on alleged violations of 4 CSR 150–5.010—the Amphetamine Rule. We affirm the judgment of the trial court.

Dr. Casey is an obstetrician engaged in a medical practice that partly involved treatment of individuals suffering from exogenous obesity. That is a condition of overweight resulting primarily from overeating. Between April 1983 and July 1986, Dr. Casey prescribed oral anorectics for several patients suffering from that condition. Oral anorectics are drugs used in dietary management that act as appetite suppressants, and have other central nervous system actions or metabolic effects. All of the drugs involved are either Schedule III or Schedule IV drugs. On several occasions Dr. Casey failed to record pulse rate, weight, blood pressure, and heart and lung conditions. In some instances the drugs were continued after prior use during which no "substantial" reduction in weight occurred. The doctor also prescribed the drugs, in some instances, for longer periods than permitted under the Amphetamine rule.

The rule, promulgated by the Board, addresses itself to amphetamines and "amphetamine-like" drugs. It provides that "the term amphetamine-like shall include all drugs with pharmacologic activity similar to the prototype drugs of the amphetamine class." The testimony at trial indicated that whether the drugs have the pharmacological activity similar to the prototype drugs in the amphetamine class depends on which pharmacological activity one focuses on. In some aspects the drugs have a similar pharmacological activity to amphetamines and in other aspects they do not. The rule does not further define which pharmacological activity is to be examined. The trial court found that the term "amphetamine-like" was vague and indefinite rendering the rule void for vagueness and in violation of due process and equal protection of law afforded by the federal and state constitutions. Before we need to reach that issue we must first address Dr. Casey's contention that the Board lacked the authority to enact the rule in the first place. We find that contention well-taken and affirm the trial court judgment.

It is axiomatic that an administrative tribunal, such as this Board, has only such jurisdiction and authority as may be granted by the General Assembly. The Board can promulgate rules and regulations only to the extent of and within the delegated authority of the legislative grant. *Missouri Hospital Association v. Missouri Department of Consumer Affairs, Regulation and Licensing*, 731 S.W.2d 262, (Mo.App.1987) [2]. We must, therefore, examine the statutes creating and governing the Board to determine the validity of the regulation in question. We must ascertain

the intent of the General Assembly from the language used in the statutes and give effect to that intent. *Id.* Nor are we restricted solely to the statutes creating and governing the Board but we may look to other legislation evidencing the legislative intent. *Id.* at [3].

The Board finds its authority in § 334.-125 which provides *in toto:* "The board shall have a common seal and *shall formulate rules and regulations to govern its actions.* Provision shall be made by the division of design and construction for office facilities in Jefferson City, Missouri, where the records and register of the board shall be maintained." (Emphasis supplied). The Board is a licensing board. It argues that its authority to license and discipline physicians and surgeons carries with it the authority to promulgate rules for the conduct of such physicians and surgeons to essentially advise them of possible grounds for discipline. It is not at all clear to us that granting the authority to formulate regulations to "govern its actions" indicates a legislative intention to authorize the Board to issue regulations on the proper method of practicing medicine.

Regardless of that, we are dealing here with a regulation involving the prescribing of controlled substances. We must therefore determine whether the language authorizing the Board to issue regulations to "govern its actions" was intended by the General Assembly as a delegation of authority to issue regulations dealing with controlled substances. We conclude that was not the legislative intention. Chapter 195 deals comprehensively with regulation of drugs. It is directed at all uses of controlled substances in the state, both legal and illegal. It identifies and classifies the various controlled substances. Section 195.017, RSMo 1991 Supp. Section 195.015 provides for the department of health to administer Chapter 195. Section 195.030

provides: "1. The department of health upon public notice and hearing *may promulgate rules* and charge reasonable fees *relating to the registration and control of* the manufacture, distribution and *dispensing of controlled substances within this state.*" (Emphasis supplied). Section 195.010(13) includes within the definition of "dispense" prescriptions from physicians and surgeons and includes within the definition of "dispenser" a "practitioner who dispenses". Practitioners include physicians, dentists, podiatrists, and veterinarians. Section 195.010(34). Section 195.-030.2 requires persons who dispense controlled substances to obtain annually a registration issued by the department of health. The following subsection authorizes persons with such registration to dispense, i.e., prescribe, controlled substances to the extent authorized by their registration and in conformity with other provisions of Chapter 195. Section 195.040 deals in part with revocation and suspension of registrations. Subsection 11 of that section provides the procedure for denying, suspending or revoking a registration and vests that authority with the department of health for violations of Chapter 195.[1]

It is apparent that the General Assembly has determined that the Department of Health is the administrative agency responsible for the implementation of Chapter 195 and for the promulgation of regulations necessary for such implementation. The grant of authority to make regulations in that area is very specifically delineated in § 195.030. Issuance of regulations occurs only after notice and public hearing. Such a requirement is not contained in § 334.125. We also must note that other professionals authorized to dispense controlled substances, i.e., dentists, podiatrists, pharmacists and veterinarians, are also subject to licensing by different boards which also have authority to issue

---

1. That provision does not preclude the Board from disciplining a physician or surgeon for violation of the provisions of Chapter 195. *See* § 334.100 RSMo 1991 Supp. But it does vest the denial or termination of a drug registration in the department of health. Subsection 334.-100.2(4)(h) authorizes discipline of a physician

or surgeon for prescribing or administering any drug, controlled substance or other treatment without sufficient examination or establishment of a physician-patient relationship. The amphetamine rule is not therefore necessary in order for the Board to discipline a physician for improper prescribing of any drug.

rules and regulations. *See* Chapter 332, Chapter 330, Chapter 338, and Chapter 340. We find it improbable that the General Assembly, after so carefully vesting authority for regulating dispensing of controlled substances in the department of health, intended by general, non-specific language, as exemplified by § 334.125, to provide to other licensing boards an authority to issue regulations, possibly inconsistent with department of health regulations, in the same area. Where one statute deals with a particular subject in a general way, and a second statute treats a part of the same subject in a more detailed way, the more general should give way to the more specific. *O'Flaherty v. State Tax Commission of Missouri*, 680 S.W.2d 153, (Mo. banc 1984) [2]. In the absence of a clear indication that the legislative intent was to give authority to the Board to make regulations in the area of controlled substances we find the Board lacks such statutory authority. The amphetamine rule is void and Dr. Casey is not subject to discipline for violation of that rule.

Judgment of the trial court is affirmed.

KAROHL, J., concurs.

AHRENS, J., concurs in result in separate concurring opinion.

AHRENS, Judge, concurring.

I concur in the result reached by the majority. I would affirm the findings and judgment of the trial court that all references to "amphetamine-like" in 4 CSR 150–5.010 are vague, indefinite, and void, for the reason that it violates the due process clauses of Article I, Section 10, Constitution of Missouri 1945, and the Fourteenth Amendment to the United States Constitution.

I respectfully disagree with the majority opinion that the State Board of Healing Arts ("Board") does not have authority to regulate physicians with regard to dispensing controlled substances. This case involves a disciplinary proceeding brought by the Board against a physician pursuant to § 334.100.2(5), (6), and (13) RSMo 1986. It is my opinion that the grant of statutory authority to the Board in § 334.125 RSMo 1986, to "formulate rules and regulations to govern its actions" is sufficient to vest authority in the Board to promulgate rules regulating physicians' conduct in prescribing and dispensing drugs. 4 CSR 150–5.010 purports to regulate only physicians' conduct. Chapter 195 grants authority to the Division of Health to regulate controlled substances. I see no conflict between the Board's rule and Chapter 195. Nor am I able to determine any legislative intent that the Division of Health's regulation of controlled substances preempts or excludes the State Board of Healing Arts' regulation of physicians' conduct in prescribing and dispensing drugs.

Concur in result.