**Sheila D. BOYD, Plaintiff/Appellant,**

v.

**STATE BOARD OF REGISTRATION FOR the HEALING ARTS, Defendant/Respondent.**

**No. 66185.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 19, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 20, 1996.

Application to Transfer Denied
March 26, 1996.

Kenneth J. Rothman, Robert Stephen Adler, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Amy E. Randles, William J. Bryan, Asst. Attys. Gen., Jefferson City, for respondent.

WHITE, Special Judge.

Dr. Sheila D. Boyd appeals from the trial court's judgment affirming the discipline imposed by the State Board of Registration for the Healing Arts ("Board") after a finding by the Administrative Hearing Commission ("AHC") of cause to discipline Dr. Boyd. We affirm in part, reverse in part and remand.

The Board filed a five count complaint against Dr. Boyd. In Count I, the Board alleged Dr. Boyd practiced medicine without being licensed by the State of Missouri. The Board alleged in Count II Dr. Boyd signed an application for Missouri Medicaid provider numbers without being licensed by the State of Missouri. The Board alleged in Count III Dr. Boyd signed an application for a Medicare provider number without being licensed by the State of Missouri. The Board would subsequently dismiss Counts IV and V with prejudice. The parties submitted the case to the AHC for partial summary determination.

The AHC concluded Dr. Boyd's license was subject to discipline under Count I for Dr. Boyd's violation of § 334.100.2(6) RSMo Supp.1987.[1] Thereafter, the Board and Dr. Boyd entered into a stipulation of facts for submission of the case to the AHC.

The Board and Dr. Boyd stipulated to the following facts regarding Count I. In 1985, the District of Columbia issued Dr. Boyd a license to practice medicine. Dr. Boyd's District of Columbia license remained active and in good standing through 1990. The People's Health Centers ("People's") in St. Louis hired Dr. Boyd as a pediatrician on or about September 12, 1988. Dr. Boyd practiced medicine in the State of Missouri without a Missouri medical license from September 12, 1988 until November 8, 1988.[2] Dr. Boyd consented to the issuance of an order by the AHC that cause existed for the Board to take disciplinary action against her medical license because she knowingly practiced medicine in Missouri without a Missouri license.

The Board and Dr. Boyd stipulated to the following facts regarding Counts II and III. On September 12, 1988, Dr. Boyd completed a portion of a Medicaid–Provider Enrollment Application. Dr. Boyd filled in her name, social security number, date of application, business address and telephone number. This application contained preprinted language above Dr. Boyd's signature which provided by signing the document she certified the information was correct, there were no material omissions and if the information became materially different she would supplement the information. On September 27, 1988, Dr. Boyd signed a second Medicare–Provider Enrollment Application. The information in the second application was not completed by Dr. Boyd and this application contained the same preprinted language as the first application. On September 27, 1988, Dr. Boyd signed two Missouri Medicaid–Provider Questionnaires. The block asking for the doctor's state license number was blank when Dr. Boyd signed these two documents. By signing the questionnaires with blanks, Dr. Boyd knew they could be completed with incorrect information concerning her license.

People's forwarded the applications and questionnaires and Dr. Boyd was issued two Medicaid provider numbers. People's received approximately $4000 for services provided by Dr. Boyd from September 1988 to December 1988. Dr. Boyd did not directly apply for or receive any reimbursement from Medicaid. On September 29, 1988, Dr. Boyd signed an incomplete application form for a Medicare provider number. Dr. Boyd knew the application called for a Missouri license number and she knew she left this information blank. When Dr. Boyd signed this form she knew or reasonably should have known it could have been completed with incorrect information. No Medicare funds were issued against the provider number issued to Dr. Boyd.

The AHC concluded there was cause to discipline Dr. Boyd as charged in Count I. The AHC also concluded there was cause to discipline Dr. Boyd's license as charged in Counts II and III under § 334.100.2(4) but no cause to discipline under §§ 334.100.2(4)(a), (14) and (17). The Board then held a hearing to determine the discipline to be imposed. The Board ordered Dr. Boyd's license suspended for six months to be followed by five years probation. Dr. Boyd filed a petition for review by the circuit court. The circuit court affirmed and Dr. Boyd raises four points on appeal.

█ We note initially the AHC concluded and Dr. Boyd stipulated there was cause to discipline her license as charged by the Board in Count I. Dr. Boyd stipulated she practiced medicine in Missouri without being licensed by Missouri. Section 334.100.2(6) RSMo 1994 provides the Board may file a complaint with the AHC for violation of any rule of Chapter 334. Section 334.010 RSMo 1994 prohibits the practice of medicine, as defined, without being a "registered" physician. Under the applicable statutory provisions in Chapter 334 there was cause to discipline Dr. Boyd for her practice of medicine without a Missouri license. The trial court's judgment is affirmed as to Count I.

---

1. All statutory references are to RSMo Supp. 1987 unless otherwise indicated.

2. Dr. Boyd was issued a Missouri medical license on December 20, 1988.

■ In her first two points, Dr. Boyd challenges the finding of cause to discipline under Counts II and III. We review the decision of the agency and not the judgment of the circuit court. *Francois v. State Board of Registration for the Healing Arts,* 880 S.W.2d 601, 602 (Mo.App.E.D.1994).

In its complaint, the Board asserted subdivisions (3), (4), (4)(a), (14) and (17) of § 334.100.2 as the grounds for disciplining Dr. Boyd on Counts II and III.[3] As to Counts II and III, the AHC concluded there was cause to discipline Dr. Boyd for unethical and unprofessional conduct under subdivision (4) of § 334.100.2. The AHC did not find cause to discipline under subdivision (4)(a) because the stipulated facts failed to establish a specific intent to deceive which is necessary to find fraud, deception or misrepresentation. The AHC also found no cause to discipline under subdivisions (14) and (17) because the facts did not support a finding of the requisite scienter element under either subdivision.[4] The AHC asserted both subdivisions require the false statement to be made "knowingly." The AHC then stated:

> As used in § 334.100.2, "knowingly" means " 'with awareness, deliberateness or intention,' WEBSTER'S THIRD INTERNATIONAL DICTIONARY[.]" *Rose v. State Bd. of Reg'n for the Healing Arts,* 397 S.W.2d 570, 577 (Mo.1965). Boyd left the spaces blank on the Medicaid questionnaires and the Medicare application, and there is no evidence that she "knew" someone else would fill in a false statement. Boyd's conduct was careless enough to constitute unethical or unprofessional conduct, but that does not mean that she was aware or intended for someone else to fill in a false license number. Therefore, we do not find cause to discipline under § 334.100.2(14) or (17).

■ In her first point Dr. Boyd contends, in part, the legislature clearly expressed in subdivision (17) the boundaries regarding physician involvement with government reimbursement programs. According to Dr. Boyd, the AHC's finding the evidence failed to establish cause for discipline under subdivision (17) precludes the agency from then finding cause under subdivision (4) when the alleged violation concerns government reimbursement programs. The issue is whether the legislature intended a doctor to be subject to discipline under subdivision (4) when the doctor specifically lacked the necessary scienter element required under subdivision (17) and the doctor's alleged misconduct is based on "careless" completion of Medicaid questionnaires and a Medicare application and there is no evidence the doctor knew another person would fill in a false statement. This presents a question of law. An administrative agency's decision based on its interpretation of law is a matter for the independent judgment of the reviewing court. *Morton v. Brenner,* 842 S.W.2d 538, 540 (Mo. banc 1992).

Section 334.100.2 and the previously mentioned subdivisions provide:

> 2. The board may cause a complaint to be filed with the administrative hearing commission as provided by chapter 621, RSMo, against any holder of any certificate of registration or authority, permit or license required by this chapter or any person who has failed to renew or has surrendered his certificate of registration or authority, permit or license for any one or any combination of the following causes:
>
> . . . .
>
> (4) Misconduct, fraud, misrepresentation, dishonesty, unethical conduct or unprofessional conduct in the performance of the functions or duties of any profession licensed or regulated by this chapter, including, but not limited to, the following:
>
> (a) Obtaining or attempting to obtain any fee, charge, tuition or other compensation by fraud, deception or misrepresentation; . . .
>
> . . . .

---

**3.** For purposes of this opinion, §§ 334.100.2(4), 334.100.2(3), 334.100.2(4)(a), 334.100.2(14) and 334.100.2(17) will all be referred to as subdivisions.

**4.** In its findings and conclusions, the AHC stated the Board failed to address subdivision (3) of § 334.100.2 in its written argument and the AHC concluded the stipulated facts did not support cause to discipline under this subdivision.

(14) Knowingly making, or causing to be made, or aiding, or abetting in the making of, a false statement in any birth, death or other certificate or document executed in connection with the practice of his profession;

. . . .

(17) Knowingly making or causing to be made a false statement or misrepresentation of a material fact, with intent to defraud, for payment under the provisions of chapter 208 RSMo, or chapter 630, RSMo, or for payment from Title XVIII or Title XIX of the federal Medicare program;

. . . .

■ In construing a statute, the words used in the statute are to be considered in their plain and ordinary meaning to ascertain the intent of the lawmakers. *Wollard v. City of Kansas City,* 831 S.W.2d 200, 203 (Mo. banc 1992). A legislative act's provisions must be construed and considered together and, if possible, all provisions must be harmonized and every clause given some meaning. *Id.* The legislature is presumed not to enact meaningless provisions. *Id.* The legislature is also presumed not to intend an unreasonable or absurd result but rather intends a logical result. *David Ranken, Jr., Technical Inst. v. Boykins,* 816 S.W.2d 189, 192 (Mo. banc 1991).

■ Subdivision (17) addresses false statements or misrepresentations of material facts regarding payments under Medicare and Medicaid. The terms of subdivision (17) require a scienter element be present to find cause to discipline under this subdivision. The doctor must "knowingly" make or cause to be made a false statement or misrepresent a material fact, "with intent to defraud," for payment under Medicare or Medicaid. § 334.100.2(17). The legislature has used the term knowingly in many instances. *e.g.* § 192.067.5 RSMo 1994; § 208.164.9 RSMo 1994. The term knowingly has been defined by the courts. *Rose v. State Board of Registration for the Healing Arts,* 397 S.W.2d 570, 577 (Mo.1965). When the legislature enacts a statute referring to terms which have had

other legislative or judicial meanings attached to them, the legislature is presumed to have acted with knowledge of these meanings. *Citizens Electric Corp. v. Director of Revenue,* 766 S.W.2d 450, 452 (Mo. banc 1989). If the legislature intended a doctor to be subject to discipline for the "careless" completion of documents for Medicare and Medicaid payments, it simply could have omitted the scienter requirement in subdivision (17) or included language to the effect the careless or negligent making of a statement regarding government reimbursement programs is a cause for discipline. The legislature chose not to do so.

■ Subdivision (4) is a general provision which renders doctors subject to discipline for, among other things, unethical or unprofessional conduct in the performance of the functions or duties of their profession. As part of this subdivision, a non-exclusive list of improper conduct is provided. Subdivision (17) specifically addresses false statements and misrepresentations of material facts regarding Medicare and Medicaid payments. When one statute deals with a particular subject in a general way, and a second statute addresses a part of the same subject in a more detailed way, the more general should give way to the more specific. *Casey v. State Board of Registration for the Healing Arts,* 830 S.W.2d 478, 481 (Mo.App.E.D.1992). This rule of statutory construction is applicable, and arguably more so, in the present case where the two provisions at issue are contained within the same section of a statute, § 334.100.2.

■ If we were to hold subdivision (4) could be used to find cause to discipline under the facts of this case, this would as a practical manner render subdivision (17) meaningless. All other things being equal, a doctor who *knowingly* makes or causes to be made a false statement or misrepresentation of a material fact, with intent to defraud, for payment under Medicare or Medicaid has committed a more serious act of misconduct than a doctor who does so only carelessly.[5] If a doctor is subject to discipline pursuant to

---

**5.** We do not imply there was evidence Dr. Boyd or anyone else "intended to defraud" the Medi-

care or Medicaid programs.

subdivision (4) for carelessly completing Medicare questionnaires and a Medicaid application then a doctor violating subdivision (17) would certainly be subject to discipline under subdivision (4). This renders subdivision (17) unnecessary and in effect meaningless. In harmonizing § 334.100.2, it appears illogical to find cause to discipline under subdivision (4) when the AHC concluded cause did not exist to discipline under subdivisions (4)(a), (14) and (17).

The legislature's inclusion of a scienter requirement for subdivisions (4)(a) and (14) provides additional support for finding the legislature did not intend for subdivision (4) to be applicable when a doctor carelessly completes a Medicare or Medicaid form but did not know whether another person would make a false statement. Subdivision (4)(a) addresses a doctor's obtaining or attempt to obtain fees. Subdivision (14) addresses the "making, causing to be made, aiding or abetting in the making of a false statement" in any certificate or document executed in connection with the practice of the applicable profession. Subdivisions (4)(a) and (14) more specifically address Dr. Boyd's conduct regarding the Medicare and Medicaid forms than the general provision under subdivision (4). The language in (4)(a) and (14) require a scienter element to find cause to discipline under these subdivisions. The AHC found the evidence failed to establish the requisite scienter elements of subdivisions (4)(a) and (14). Under the facts of the present case, subdivision (4) cannot be used to find cause to discipline Dr. Boyd.

In response to Dr. Boyd's argument, the Board emphasizes the "including, but are not limited to" language in subdivision (4). This language refers to the list following subdivision (4) and merely reflects the conduct addressed in subdivisions (4)(a-q) does not constitute the only conduct for which cause to discipline may be found. Subdivision (4)(a), which is a part of subdivision (4), more specifically addresses Dr. Boyd's conduct regarding the Medicare and Medicaid forms and, therefore, this subdivision is more appli-

cable. The fact the list in (4)(a-q) is non-exclusive does not negate the scienter requirement for a doctor's conduct involving Medicare or Medicaid payments. In subdivision (17), the legislature specifically addressed false statements and misrepresentations of material facts regarding Medicare and Medicaid payments and, thereby, expressed its intent regarding doctor's conduct involving this subject. The language cited by the Board simply does not justify finding cause to discipline Dr. Boyd under Counts II and III. The trial court's judgment affirming the finding of cause to discipline Dr. Boyd's license on Counts II and III of the Board's complaint is reversed. Discussion of Dr. Boyd's additional arguments in points one and two is not necessary.

In her third point, Dr. Boyd argues the Board during the disciplinary hearing improperly excluded evidence and denied her a right to a fair hearing. Dr. Boyd contends the Board improperly excluded letters regarding her good character and records of prior disciplinary decisions by the Board. Dr. Boyd also contends it was improper for the Board's legal advisor to rule on evidentiary matters when the advisor and the attorney prosecuting the matter were both employed by the Missouri Attorney General.

■ Subject to a narrow exception not applicable in the present case, appellate courts will not review a claim of error regarding exclusion of evidence without a specific and definite offer of proof. *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 883–84 (Mo. banc 1985). This rule applies to decisions by administrative agencies. § 536.070(7) RSMo 1994; *Greene County Concerned Citizens v. Board of Adjustment*, 873 S.W.2d 246, 261 (Mo.App. S.D.1994). Dr. Boyd failed to make definite and specific offers of proof regarding the excluded evidence and the claim of error regarding the exclusion of evidence will not be reviewed.[6] Because there is no reviewable claim of error as to the exclusion of evidence, Dr. Boyd can demonstrate no prejudice from the advisor and attorney prose-

---

**6.** Dr. Boyd is represented by different counsel on appeal than represented her at the disciplinary

hearing.

cuting the matter both being employed by the Missouri Attorney General. Dr. Boyd's third point is denied.

Dr. Boyd argues in her fourth point the discipline imposed by the Board is not supported by substantial and competent evidence. We agree to the extent the Board's order suspending Dr. Boyd's license for six months for the violations under Count I is not supported by substantial and competent evidence.

Dr. Boyd admitted from September 12, 1988 to November 8, 1988 she practiced medicine in Missouri without a Missouri license. During this period, Dr. Boyd possessed a valid license from the District of Columbia. The present case is not one where a doctor without a medical license or medical training treated patients. This is not meant to diminish the importance of possessing a Missouri license when practicing medicine in Missouri. However, there is not an allegation or any evidence Dr. Boyd did not adequately treat her patients. The primary purpose of statutes authorizing the Board to discipline a doctor's license is to safeguard the public health and welfare. *Missouri Board of Registration for the Healing Arts v. Levine*, 808 S.W.2d 440, 442 (Mo.App.W.D.1991). Under the circumstances of this case, suspension of Dr. Boyd's license for the violations charged in Count I is not supported by substantial and competent evidence.[7]

However, there is substantial and competent evidence to support the imposition of probation only for the stipulated conduct under Count I. Four witnesses testified for Dr. Boyd at the disciplinary hearing. A priest testified Dr. Boyd was the first doctor to volunteer for a project where she treated without compensation children from a poor St. Louis neighborhood. This witness also testified Dr. Boyd continues to treat without compensation children in this neighborhood and there are a large number of these children who would not receive medical care if Dr. Boyd could not practice.

The second witness serves as Director of Research for the Health Policy Institute which is a research, education and advocacy organization for maternal and child health services in Missouri. The witness testified she found it very difficult, until she met Dr. Boyd, to obtain medical care for her foster child who had been abused. The witness also testified regarding the professional and caring treatment of the child by Dr. Boyd and the fact Dr. Boyd receives no compensation for the treatment. The witness asserted Dr. Boyd's reputation in the community was she is a "very fine person" and a "very competent professional."

A St. Louis University employee, who serves as president of a health management corporation, testified he contracted with Dr. Boyd in 1992 for her to serve as medical director of pediatric services for the St. Louis County clinics. This witness testified he wanted Dr. Boyd to serve as medical director because of her excellent reputation in the community particularly in the area of pediatric services for indigent patients. The witness also testified Dr. Boyd's references regarding her clinical abilities were and continued to be excellent.

The fourth witness is a pediatric nurse practitioner who works for Edgewood Children's Center and who participated in the decision to hire Dr. Boyd as medical director for the facility beginning in January 1990. This facility treats emotionally, sexually and physically abused children and Dr. Boyd renders services at the facility once a month for a "very nominal fee." The witness testified the children, particularly those who have been sexually abused, need to be treated carefully. According to this witness, Dr. Boyd treats the children in a very understanding manner and the children "dearly love her." This witness also testified regarding Dr. Boyd's reputation in the community and the negative impact suspension of Dr. Boyd's license would have on the community and the Edgewood Children's Center, specifically. The imposition of probation for the

---

7. The Board filed a motion with this court to reconsider our denial of the Board's request to supplement the Record on Appeal with Dr. Boyd's deposition and the affidavit of Douglas Wheeler, D.O. The motion is denied. Even if Dr. Boyd's deposition and the affidavit were properly before this court, these documents do not justify a six month suspension.

stipulated conduct under Count I is supported by substantial and competent evidence. *Gard v. State Board of Registration for the Healing Arts,* 747 S.W.2d 726, 728–30 (Mo.App.W.D.1988).

The trial court's judgment is affirmed in part, reversed in part and remanded for the Board to consider, consistent with this opinion, the discipline to be imposed for the conduct under Count I.

SMITH, P.J., concurs.

PUDLOWSKI, dissents with opinion.

PUDLOWSKI, Judge, dissenting.

I respectfully dissent.

The Board filed a five count complaint against Dr. Boyd with the AHC. The Board's complaint sought a determination from the AHC that cause existed to discipline Dr. Boyd's license under § 334.100 et seq RSMo. Count I sought to discipline her Missouri license for the unlicensed practice of medicine. The other two counts upon which the discipline was based pertained to the filling in of Medicaid (Count II) and Medicare (Count III) forms blank or partially in blank. Counts IV and V were dismissed by the Board.

After the Board imposed discipline on her license, Dr. Boyd appealed to the Circuit Court of St. Louis County. The circuit court affirmed and the complainant appealed to this court.

Our court reviews the decision of the administrative agency, the AHC, not the judgment of the circuit court. *Kramer v. Mason,* 806 S.W.2d 131, 134 (Mo.App.E.D.1991). On review we afford due weight to the experience and expertise of the agency, *Hornsby v. Director of Revenue,* 865 S.W.2d 662, 663 (Mo. banc 1993), and view the evidence in a light most favorable to the agency decision. *Keesee v. Meadow Heights R–II School District,* 865 S.W.2d 818, 823 (Mo.App.S.D.1993).

According to the Stipulation of Facts submitted by the parties to the AHC, Dr. Boyd received her license to practice medicine in the District of Columbia on April 25, 1985; it remained active and in good standing through 1990. On September 12, 1988, she was hired by The People's Health Centers (People's) in St. Louis, Missouri. Dr. Boyd received her Missouri physician's license on December 29, 1988.

In relation to Count I, Dr. Boyd stipulated that she knew she was supposed to have a Missouri license to practice medicine and that she did not have one. She further admitted that she practiced medicine notwithstanding the fact that she did not have a license. With respect to Count I alone, Dr. Boyd consented to an order by the AHC that "... that *cause* (emphasis added) exists for the Board to take disciplinary action against Dr. Boyd's Missouri medical license...."

I recognize that a stipulation as to a conclusion of law does not bind the Commission. Litigants cannot stipulate as to questions of law. *State v. Biddle,* 599 S.W.2d 182, 186 and n. 4 (Mo. banc 1980). Further, the Commission must independently and impartially review the facts of any case. *Kennedy v. Missouri Real Estate Comm'n,* 762 S.W.2d 454, 457 (Mo.App.E.D.1988). A stipulation as to there being cause to discipline must contain "sufficient facts to support the finding the parties seek." Regulation s CSR 15–2.450(1)(a)2. The Commission, having reviewed the stipulated facts and applicable law, agreed that the record supports the suggested conclusion.

The Commission clearly found as to Count I that there was cause to discipline Dr. Boyd under § 334.100.2(6) which authorizes discipline for violating any provision of Chapter 334. Section 334.010 states that: "It shall be unlawful for any person not now a registered physician within the meaning of the law to practice medicine or surgery...." The majority, in its opinion, ignores the AHC's determination in relation to Count I that cause exists to discipline Dr. Boyd's license. The AHC stated that "Unlike § 334.100.2(4), § 334.010 requires no scienter, the action itself is a violation." Thus, assuming *arguendo* that I agree with the majority's position regarding Counts II and III of the Board's complaint, the Board shall have the ability and the discretion to impose discipline on Dr. Boyd's license for the violation of § 334.010. Under §§ 334.100.3 and 334.100.4, the Board

could have revoked her license for up to seven years or could have suspended her license for up to three years. The majority and Dr. Boyd are essentially arguing that the Board imposed too harsh a penalty upon Dr. Boyd. The majority cites no authority for its decision to remand. In reviewing the Board's decision, we review the record in a light most favorable to the Board's decision and disregard evidence that might support findings different from those of the agency. *Clark v. Reeves,* 854 S.W.2d 28, 31–32 (Mo.App.W.D.1993). *Francois v. State Bd. of Registration for the Healing Arts,* 880 S.W.2d 601, 603 (Mo.App.E.D.1994). I believe that the Board's suspension of Dr. Boyd's license, even absent the unprofessional and unethical conduct contained in Counts II and III, is supported by substantial and competent evidence: Dr. Boyd stipulated that she was guilty of the unauthorized practice of medicine and her license was subject to discipline. Therefore, I disagree with the majority. I would affirm the Commission's finding as to Count I.

Pertaining to Counts II and III, Dr. Boyd stipulated that on September 12, 1988, she signed a Medicaid–Provider Enrollment Application. Dr. Boyd filled in her name, social security number, date of application, principal place of business address and telephone number. She then signed the application as the "Applying Provider." On September 27, 1988, Dr. Boyd signed a second Medicaid–Provider Enrollment Application which had been filled in by someone other than herself. Also, on September 27, 1988, she signed two Missouri Medicaid Provider Questionnaires, which had been completed in large part. The only blank left was Block 17 which asked for the provider's state license number. This block was left blank on each questionnaire when they were signed by Dr. Boyd. She was aware that the questionnaire asked for the state license number and she knew she left it blank. Dr. Boyd stipulated that she knew by signing the questionnaires with blanks that they could be filled in by someone else with incorrect information and she knew they could be mailed for processing and approval. People's, not Dr. Boyd, mailed in the applications and questionnaires, along with a document purporting to be Dr.

Boyd's Missouri license pocket card and her diploma. The information received by the Missouri Division of Medical Services, Provider Enrollment Unit, reflected that her license number was 15143, her District of Columbia license number. The Board had not issued this license number to Dr. Boyd. As a result of the information provided to the Provider Enrollment Unit, Dr. Boyd received two Medicaid Provider numbers. At the time she filled in the Medicaid forms, Dr. Boyd knew that she was not licensed to practice the healing arts in Missouri. As part of her employment at People's, Dr. Boyd was required to have a Medicaid provider number.

People's received $3,922.25 for services rendered by Dr. Boyd from September 12, 1988 to December 20, 1988 which were claimed under the two Medicaid provider numbers issued to Dr. Boyd.

On September 29, 1988, Dr. Boyd signed an incomplete application for a Medicare provider number, knowing that the application called for a Missouri license number, she left this information blank. She further stipulated that when she signed the form, she knew or should have reasonably known that it could have been completed with incorrect information. At the time she signed the Medicare provider number application, Dr. Boyd was not licensed in Missouri.

After Dr. Boyd completed the application, People's submitted it to Medicare. People's also sent a document purporting to be Dr. Boyd's Missouri license pocket card and her diploma. The application, which was processed, had her District of Columbia license number as her Missouri license number. Although Dr. Boyd did receive a Medicare provider number sometime in the fall of 1988, neither People's nor Dr. Boyd applied for or received Medicare funds against the Medicare number issued to her.

In her first point on appeal, Dr. Boyd claims that the AHC erred as a matter of law and was in excess of its jurisdiction because her conduct, with respect to Counts II and III of the Board's complaint, was not in the performance of the "functions and duties" of the medical profession. I disagree.

In Counts II and III, Dr. Boyd was charged with violating § 334.100.2(4) RSMo Supp.1987, which authorizes the Board to discipline a physician for:

> Misconduct, fraud, misrepresentation, dishonesty, unethical conduct or unprofessional conduct in the performance of the functions and duties of any profession licensed or regulated by this chapter, including, but not limited to, the following: ....

In order to constitute cause to discipline under § 334.100.2(4), the unprofessional or unethical conduct must be "in the performance of the functions and duties" of the medical profession. Dr. Boyd argues that the signing of the applications for Medicaid and Medicare provider numbers was not part of the functions and duties of a physician. Further, she argues that because the applications were completed and submitted by her employer, People's, she is less culpable. Dr. Boyd relies primarily upon *Board of the Healing Arts v. Levine*, 808 S.W.2d 440 (Mo. App.W.D.1991) in support of her argument.

In *Levine*, the Western District held in part that a non-treating physician who gave expert testimony was not in the performance of the functions and duties of the medical profession. The court also found under the facts that they did not establish that *Levine* obtained fees or other compensation by fraud, deception or misrepresentation. *Id.* at 441. Therefore, the court held that his license was not subject to discipline under § 334.100.2(5) RSMo Supp.1983 despite the fact that he had lied under oath while providing his expert testimony. *Id.* at 443. At a deposition, Levine testified that he had passed his specialty boards on his second attempt. At an unrelated trial, *Levine* testified under oath that it took him four attempts to pass his boards. The Board claimed that, in truth, it took him five attempts to pass his boards. *Id.* at 441.

Dr. Boyd has attempted to characterize her actions as mere "administrative" oversights that were as far removed from the actual care of patients as giving expert testimony. Dr. Boyd ignores the fact that she was a salaried employee of People's and her employment contract required her to have a Medicaid provider number. Obtaining a

Medicaid number was an integral part of Dr. Boyd's practice of medicine at People's. Applying for a provider number was expected of her as a physician and it was a duty that she assumed as part of her practice at People's.

Dr. Boyd has focused her arguments on issues such as patient treatment and patient health and safety. In *Levine*, the Western District stated that the elements of function or duty included any "function," "duty," "obligatory task," "moral or legal obligation" or act "expected of" a physician. *Id.* at 443. The court went on to point out that § 334.100.2 RSMo Supp.1983 and 1986 listed twenty-one offenses for which the Board could cause a complaint to be filed. Of the twenty which applied to physicians, only three related directly to patient care. The other seventeen, the court pointed out, related to patient care only indirectly, if at all. *Id.* In making this point, the court was indicating that "[i]f the legislature had wanted to regulate the conduct of a physician acting as a non-treating medical witness, it would have statutorily so provided. The mention of one thing in a statute implies the exclusion of another." *Id.*

In 1987, the legislature amended § 334.100.2. Prior to those amendments, the statute under which the Board attempted to discipline Dr. Levine authorized discipline for:

> (4) Obtaining or attempting to obtain any fee, charge, tuition or other compensation by fraud, deception or misrepresentation;
>
> (5) Incompetency, misconduct, gross negligence, fraud, misrepresentation or dishonesty in the performance of the functions and duties of any profession licensed or regulated by this chapter[.]

The 1987 amendments added a nonexclusive list of the functions and duties of the medical profession at paragraphs (4)(a) through (q). When the legislature added those paragraphs, it was partially defining the scope of a physician's functions or duties. Some of the paragraphs directly concerned the diagnosis and treatment of the sick and others do not: specifically see subdivisions (*l*) through (p) relating to a physician's conduct toward the Board and subdivision (q) regarding ad-

vertising. Most significantly was the addition of the following language: **"including, but not limited to, the following[.]"** § 334.100.2(4) RSMo Supp.1987 (emphasis supplied). Expressly in the statute, the legislature has elucidated the fact that the list contained in § 334.100.2(4)(a)–(q) is only illustrative of the types of activities which would subject a physician's license to discipline. Therefore, although the holding in *Levine* might be instructive for some purposes, the Western District's 1991 interpretation of the 1986 statute is not determinative of the phrase "functions and duties" as used in the 1987 amended statute.

In construing a statute substantially the same as § 334.100.2(5), our court held in *Cooper v. Missouri State Board of Pharmacy,* 774 S.W.2d 501, 504 (Mo.App.E.D.1989), that a pharmacist's submission of false Medicaid claims supported the findings of "dishonesty and misrepresentation in the performance of his duties as a licensed pharmacist in violation of § 338.055.2(5) RSMo 1986." If the efforts to obtain compensation from Medicaid are within the functions and duties of the pharmacy profession, I believe that it is reasonable to conclude that they are within the functions and duties of the medical profession. Furthermore, obtaining fees for services rendered has long been considered as part of the practice of medicine. *See Hughes v. State Board of Health,* 348 Mo. 1236, 159 S.W.2d 277, 280 (1942).

The fact that the Medicare and Medicaid reimbursements would have been paid to People's, her employer, does not effect this line of reasoning. Salaried employee's are expected to obtain reimbursement for their services even if the payment goes directly to the employer. Although the forms that Dr. Boyd filled out were not claim forms, they were a necessary predicate to People's receiving reimbursement from Medicare and Medicaid and integral to that process. The reimbursement was obtained by misrepresentation.

Therefore, I would hold that the AHC did not err in finding that completing and executing Medicare and Medicaid forms was within the functions and duties of a physician. I would deny point I.

In her second point, Dr. Boyd challenges the AHC's finding that the stipulated conduct she engaged in constituted "unethical" and "unprofessional" actions on the grounds that it was not supported by competent and substantial evidence because there was no evidence that she provided incorrect or false information. I disagree.

The standard of review for this case is whether the AHC's decision is supported by competent and substantial evidence; whether the decision of the AHC was arbitrary, capricious, unreasonable or an abuse of discretion. *Curtis v. Board of Police Commissioners of Kansas City,* 841 S.W.2d 259, 261 (Mo.App. W.D.1992). The AHC action is arbitrary and capricious only if there is no substantial evidence to support it. *State ex rel. Baer v. Campbell,* 794 S.W.2d 690, 691 (Mo.App.E.D. 1990). "Substantial" evidence is that evidence which supports the discretionary determination of the agency. *Curtis v. Board of Police Commissioners of Kansas City,* 841 S.W.2d at 261.

The AHC relied upon the Affidavit of the expert, Douglas Wheeler, D.O., and paragraphs 11 through 35 of the Stipulation of Facts, as the sole factual and opinion evidence upon which it based its decision.

The Board has submitted a motion asking this court to vacate its order of February 17, 1995 and reconsider its denial of the Board's request to supplement the Record on Appeal to include the Affidavit of Douglas Wheeler, D.O. and the deposition testimony of Dr. Boyd. I would deny the motion.

In *Perez v. Board of Registration for the Healing Arts,* 803 S.W.2d 160 (Mo.App.W.D. 1991), the AHC suspended a doctor's license for ethical violations involving a sexual relationship with a patient. The doctor challenged the suspension without expert testimony to instruct the trier of fact as to the applicable ethical and professional standards within the medical community. In denying the doctor's challenge, the Western District stated that: "It was not necessary for the Commission to receive expert testimony. The facts presented herein were sufficient to allow inexperienced persons to draw a fair and intelligent opinion on whether Dr. Perez

engaged in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public." *Id.* at 164.

In Dr. Boyd's case, I find that expert testimony is also unnecessary. Based solely upon the stipulated facts that are properly part of the record, I would agree that Dr. Boyd's conduct was unethical and unprofessional.

I find instructive the definitions of unethical and unprofessional from *Webster's Third New International Dictionary,* pp. 2494 and 2506 (unabridged 1983) which the AHC cited. Unethical is not conforming to professionally endorsed principles and practices. Unprofessional is not characteristic of, or not befitting, a member of a profession.

Dr. Boyd knew that she was signing an application to provide services for which Medicare and Medicaid would reimburse People's for her services. She knew that she did not have the Missouri license needed to provide medical services but would provide them anyway. She left the "state license number" space blank without providing an explanation of the status of her Missouri license. Her contract with People's provided that she would have a Medicaid provider number. On both the Medicare and Medicaid provider applications which Dr. Boyd signed as the applying provider was the following statement:

> By the signature below, I certify that all answers and information given to this application are true and that there has been no material misrepresentation or omissions. I also understand that I must supplement this information if due to change of ownership or other changes, it become (sic) materially different than reported herein.

Dr. Boyd attempts to hide behind the fact that when she signed the forms they were blank or partially blank. However, she admitted that she knew or reasonably should have known that it could have been completed with incorrect information. Further, by her signature, she certified that the answers were true and that there were no material misrepresentations or omissions. I consider leaving the Missouri license number space

blank at the time of the signing to be material. Moreover, the record does not show any attempt by Dr. Boyd to supplement her applications upon receipt of her Missouri license number in December, 1988, as required by the form. This is more than "'careless' completion of documents for Medicare and Medicaid payments" as the majority asserts. To allow Dr. Boyd to go unpunished when she admitted that she knew or should have known that the form could have been completed with incorrect information is improper. If the majority seeks an element of scienter, I believe it is contained in her admission that she knew or should have known that the form could have been completed with incorrect information. I believe that this is culpable conduct particularly in light of the declaration directly above Dr. Boyd's signature on the Medicare and Medicaid forms. Therefore, I would affirm the AHC's determination that Dr. Boyd's conduct was both unprofessional and unethical. I would deny point II.

Dr. Boyd's third point contends that the Board used unlawful procedure and denied her a fair trial because it: 1) failed to admit character evidence in the form of letters; 2) failed to admit into evidence and consider records of prior disciplinary proceedings; and 3) allowed the Board's legal advisor to rule on evidentiary matters, despite the fact that the legal advisor and the attorney prosecuting the matter were both from the Attorney General's Office. I disagree.

At the hearing before the Board to determine the discipline to be imposed on her license, Dr. Boyd offered two exhibits into evidence: 1) Exhibit 1, which consisted of letters from numerous individuals concerning her abilities as a physician, her assistance to the community and her personal and professional reputation; and 2) Exhibit 2, which consisted of a written record of all previous published disciplinary actions taken by the Board from December 5, 1987 through the date of the hearing. After conferring with its legal advisor, the Board denied admission of the evidence. We review the exclusion of the evidence, *ex gratia,* despite Dr. Boyd's counsel's failure to make the required offer of proof. § 536.070(7) RSMo 1994; *Bauer v.*

*Custom Trailer Repair, Inc.,* 829 S.W.2d 104, 106 (Mo.App.E.D.1992).

The letters Dr. Boyd sought to introduce appear to be hearsay which is not within any recognized exception. They are out-of-court statements offered to prove the truth of the matter asserted, *i.e.,* her character, reputation and professional abilities. Even though the Board may have been able to admit the letters, *Franklin v. Board of Directors,* 772 S.W.2d 873, 883 (Mo.App.W.D.1989), under ordinary circumstances, hearsay evidence could not be considered competent and substantial evidence to support the determination of the AHC. *Hacienda Enterprises No. 2, Inc. v. Smarr,* 841 S.W.2d 807, 811 (Mo. App.E.D.1992). Dr. Boyd was able to present character evidence to the Board from four live witnesses. These witnesses included a Roman Catholic priest, a research director for an educational and advocacy center for maternal and child health services, the president of a company that provides consulting services to physicians and hospitals and a registered nurse. They provided their personal opinion of Dr. Boyd and, to an extent, testimony of her reputation in the community. The exclusion of letters offering character evidence which would have been partially repetitious, cumulative and of questionable probative value did not prejudice Dr. Boyd. The Stipulation of Facts contained substantial and competent evidence to uphold the decision of the Board. I would hold that the Board did not abuse its discretion in excluding Exhibit 1. The exclusion of the evidence did not result in a substantial or glaring injustice nor unduly prejudice Dr. Boyd.

As for Exhibit 2, the summaries of orders of discipline imposed by the Board in other cases, the Board did not commit error in refusing its admission. Section 621.110 RSMo 1994 states that at a hearing, such as the one held by the Board to determine the discipline to impose on Dr. Boyd's license, "[t]he agency may receive evidence relevant to said issue from the licensee or any other source." The discipline imposed by the Board in every case since 1987 is not necessarily relevant to the facts and circumstances under which Dr. Boyd's license was disciplined. Although of dubious relevance and probative value, there is no indication that the Board did not consider its other most recent decisions when deciding the amount of discipline appropriate in this case. The punishment imposed by the Board was well within the range of available punishments. The Board's action was supported by substantial and competent evidence, §§ 334.100.3 and 334.100.4. Accordingly, I find no abuse of discretion in failing to admit Exhibit 2.

Because I found that the Board did not commit error nor abuse its discretion in excluding Dr. Boyd's Exhibits 1 and 2, I find no merit in her contention that the Board erred in allowing its legal advisor to rule on evidentiary matters, despite the fact that the legal advisor and the attorney prosecuting the matter were both from the Attorney General's Office. I would deny Point III.

In her final point on appeal, Dr. Boyd asserts that the order disciplining her license: 1) is unsupported by competent and substantial evidence based upon the whole record; 2) is arbitrary, capricious and unreasonable; and 3) constitutes an abuse of discretion. I disagree.

Dr. Boyd argues that the entirety of the uncontroverted evidence before the Board indicated that she is of good character, is a competent and caring physician and dedicated to delivery of medical services to the indigent.

Dr. Boyd apparently ignores the Stipulation of Facts when asserting this final point. She stipulated that she knew that she was required to have a Missouri license to practice medicine and that she did not have one. She further admitted that she practiced medicine notwithstanding the fact that she did not have said license. She stipulated that "her actions ... constituted 'misconduct' and 'unprofessional' behavior ..." and "... that cause exists for the Board to take action against Dr. Boyd's Missouri medical license...." Furthermore, Dr. Boyd stipulated to conduct pertaining to the Medicare and Medicaid forms, Counts II and III of the Board's petition, which both the AHC and this court has deemed "unethical" and "unprofessional."

Therefore, despite the good character evidence which Dr. Boyd properly submitted to the Board, I find that there was competent and substantial evidence to uphold the imposition of discipline on Dr. Boyd's license. The decision by the Board was not arbitrary, capricious or unreasonable nor did it amount to an abuse of discretion. I would deny Point IV.

I would affirm in all respects the decision of the AHC and the imposition of discipline imposed on Dr. Boyd's license by the Board in all respects.