

# In the
# Missouri Court of Appeals
## Western District

SURENDRA CHAGANTI,

        Appellant,

v.

MISSOURI BOARD OF
REGISTRATION FOR THE HEALING
ARTS,

        Respondent.

WD77746

OPINION FILED:

March 10, 2015

---

**Appeal from the Circuit Court of Cole County, Missouri
The Honorable Jon Edward Beetem, Judge**

**Before Division Three:
Victor C. Howard, P.J., James Edward Welsh, and Gary D. Witt, JJ**.

Surendra Chaganti appeals the decision of the Administrative Hearing Commission (AHC) finding that the Missouri Board of Registration for the Healing Arts (Board) had cause to discipline his medical license pursuant to section 334.100.2(4) and (4)(g), RSMo Cum. Supp. 2010. The AHC found that, when SSM DePaul Health Center (DePaul) revoked Chaganti's courtesy staff privileges because Chaganti failed to list all hospital affiliations on his reapplication for active staff privileges at the hospital, it was a "final disciplinary action" taken

by the hospital that was related to "unprofessional conduct." The AHC also found that, when SSM St. Mary's Health Center (St. Mary's) revoked Chaganti's staff privileges because Chaganti failed to update his information and report that DePaul had revoked his staff privileges, it was also a "final disciplinary action" taken by the hospital that was related to "unprofessional conduct."

On appeal, Chaganti claims: (1) that the terms "unprofessional conduct" and "final disciplinary action" used in section 334.100.2(4)(g) are unconstitutionally vague, (2) that the actions taken by the hospitals in this case were not "final disciplinary actions"; (3) that nothing in section 334.100.2 permits the Board to file a complaint against a licensee for actions taken by a hospital where the licensee omits information or fails to update information in an application for medical staff privileges; (4) that nothing in section 334.100.2 permits the Board to file a complaint against a licensee for the licensee's failure to report any changes of staff privileges at another hospital; (5) that no substantial evidence supported the AHC's decision that Chaganti omitted information in his staff privileges application at DePaul; (6) that no substantial evidence supported the AHC's decision that Chaganti omitted information in his staff privileges application at St. Mary's; and (7) that the AHC erred in ruling that there was no evidence of conflict of interest and selective prosecution by the members of the Board. We reverse the circuit court's judgment affirming the AHC's decision that cause existed to discipline Chaganti's medical license pursuant to section 334.100.2(4) and (4)(g).

**Factual and Procedural Background**

Chaganti is licensed by the Board as a physician and surgeon. At all relevant times, his license was current and active.

On January 3, 2006, Chaganti submitted a reapplication for staff privileges at DePaul and a request to have his status changed from "courtesy staff" to "active staff." Upon investigation, DePaul discovered that Chaganti had not included all past hospital affiliations on his reapplication. On the reapplication form, Chaganti listed St. Alexius Hospital as his primary hospital and listed affiliations with St. John's Hospital and DePaul. Chaganti did not list St. Mary's, Des Peres Hospital, and St. Anthony's Medical Center on the reapplication form. By letter dated May 22, 2006,[1] DePaul denied Chaganti's reapplication and revoked his staff privileges based on his failure to provide updated information on his DePaul reapplication form. The letter stated:

> As a member of the SSM DePaul Health Center Medical Staff, you agreed to Section 3.3.6 of the Credentials Manual[2] which requires you to provide updated information at the time of any significant change in the information provided in your most recent application form. You also agreed to Section 3.3.7 of the

---

[1]In response to the letter, on May 30, 2006, Chaganti's attorney e-mailed a scanned copy of his reapplication to DePaul which listed the missing hospitals on a separate page. This page was not included in Chaganti's initial reapplication.

[2]Section 3.3.6 of the Credentials Manual provided:

Agrees to provide and update the information requested on the original application and subsequent reapplications or clinical privileges request forms at the time of any significant change in the information provided on the most current application form and to provide all information requested by Health Center or its Medical Staff regarding the Practitioner's or Independent Provider's ability to continuously meet the qualifications, standards and requirements of Health Center and its Medical Staff. Information that must be provided and updated includes voluntary relinquishment of Professional Staff appointment or clinical privileges at any health care facility; voluntary or involuntary limitation, reduction, suspension or termination of appointment or clinical privileges at another health care facility; all professional liability claims, settlements and judgments; any limitation on or cancellation of professional liability insurance; any challenges, stipulations, suspensions, relinquishments or termination of any license or registration; and any charges of a felony. Failure to provide and update information as required in this Section 3.3.6 or in other sections of this Manual shall be grounds for automatic termination of Professional Staff appointment and clinical privileges and/or such other corrective action as Health Center and its Medical Staff deem appropriate. A Practitioner or Independent Provider whose Professional Staff appointment and clinical privileges are automatically terminated pursuant to this Section 3.3.6 shall not be entitled to the procedural rights set forth in Article 9 of the Manual.

3

Credentials Manual[3] which states that any misrepresentation or misstatement in or omission from the application, reapplication and any required updates, whether intentional or not, shall constitute cause for automatic and immediate rejection of the application/reapplication, if applicable, and result in denial or revocation of previously granted Medical Staff membership and clinical privileges. Such denials or revocations are not subject to the procedural rights set forth in Article 9 of the Credentials Manual, and the Health Center President may, in his or her discretion, refuse to accept subsequent applications from the affected Practitioner. We have attached those Sections of the Credentials Manual for your reference.

Due to your omission of three hospital affiliations on your reappointment application, your Medical Staff membership and clinical privileges are revoked effective immediately and your reappointment request is denied pursuant to Section 3.3.7 of the Credentials Manual. If you currently have inpatients in house at the Health Center, the revocation of your Medical Staff membership and clinical privileges will be effective immediately upon the discharge of your last patient. You are not entitled to any of the procedural rights provided in Article 9 of the Credentials Manual with respect to this decision.

On June 26, 2006, St. Mary's, which is affiliated with DePaul, informed Chaganti by letter from its President, Sr. Susan Scholl, that Chaganti's medical staff membership and clinical privileges were being revoked and terminated due to his failure to report DePaul's revocation of his medical staff membership and clinical privileges. The letter stated:

SSM St. Mary's Health Center ("St. Mary's") has just discovered your Medical Staff membership and clinical privileges were terminated at SSM DePaul Health Center ("DePaul") on May 22, 2006, for material omissions from your reapplication. You have not reported DePaul's revocation of your Medical Staff appointment and clinical privileges to St. Mary's.

As a member of the St. Mary's Medical staff, you agreed to Section 3.3.6 of the Credentials Manual which requires you to provide updated information at

---

[3]Section 3.3.7 of the Credentials Manual provided:

Agrees that any misrepresentation or misstatement in or omission from the application, reapplication, or any required updates, whether intentional or not, shall constitute cause for automatic and immediate rejection of the application/reapplication, if applicable, and result in denial of appointment and clinical privileges or revocation of previously granted Professional Staff membership and clinical privileges. In the event of such a denial or revocation, the affected Practitioner or Independent Provider is not entitled to any of the procedural rights provided in Article 9 of this Manual and the Health Center President may, in his or her discretion, refuse to accept subsequent application from the affected Practitioner or Independent Provider.

4

the time of any significant change in the information provided in your most recent application form. You also agreed to Section 3.3.7 of the Credentials Manual which states that:

> [A]ny misrepresentation or misstatement in or omission from the application, reapplication, or any required updates of such information, whether intentional or not, shall constitute cause for automatic and immediate rejection of the application/reapplication, if applicable, and result in denial of appointment and clinical privileges or revocation of previously granted Professional Staff membership and clinical privileges. In the event of such a denial or revocation, the affected Practitioner or Independent Provider is not entitled to any of the procedural rights provided in Article 9 of this Manual, and the campus-specific Hospital President may, in his or her discretion, refuse to accept subsequent applications from the affected Practitioner or Independent Provider.

> Due to your failure to report DePaul's revocation of your Medical Staff membership and clinical privileges to St. Mary's at the time of DePaul's revocation, your Medical Staff membership and clinical privileges are revoked effectively immediately. You are not entitled to any of the procedural rights provided in Article 9 of the Credentials Manual with respect to this decision. We have attached the Credentials Manual for your reference.

Chaganti was not given the right to appeal from DePaul's decisions to deny his reappointment request and to revoke his staff privileges; he also was not given the right to appeal from St. Mary's decision to revoke his staff privileges.[4]

On February 15, 2011, the Board filed a first amended complaint with the AHC against Chaganti, alleging cause to discipline Chaganti's license pursuant to section 334.100.2(4) and

---

[4]Regulation 19 CSR 30-20.086(5), which govern medical staff in hospitals, states:

Written criteria shall be developed for privileges extended to each member of the staff. A formal mechanism shall be established for recommending to the governing body delineation of privileges, curtailment, suspension or revocation of privileges and appointments or reappointments to the medical staff. The mechanism shall include an inquiry of the National Practitioner Data Bank. *Bylaws of the medical staff shall provide for hearing and appeal procedures for the denial of reappointment and for the denial, revocation, curtailment, suspension, revocation, or other modification of clinical privileges of a member of the medical staff.* (Emphasis added).

5

(4)(g).[5]  After a hearing, the AHC found that DePaul had refused to grant Chaganti active staff privileges for omitting past hospital affiliations in his reapplication for staff privileges and that St. Mary's had revoked Chaganti's staff privileges for failing to update his information and report that DePaul had revoked his staff privileges.  The AHC concluded that the actions taken by DePaul and St. Mary's were "final disciplinary actions" and were "related to unprofessional conduct," and, therefore, concluded that Chaganti's license was subject to discipline pursuant to section 334.100.2(4) and (4)(g).  Thereafter, Chaganti filed a petition for judicial review of the AHC's decision with the Circuit Court of Cole County.  The circuit court affirmed the AHC's decision. Chaganti appeals.

In an appeal from the circuit court's review of decision of the AHC, this court reviews the AHC's decision, not the decision of the circuit court.  *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009).  "Article V, section 18 of the Missouri Constitution articulates the standard of judicial review of administrative actions." *Id*.  On appeal, we must determine "whether the agency actions 'are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record.'" *Id*. (quoting Mo. Const. art. V, §18).  We, therefore, must determine whether the decision is supported by sufficient competent and substantial evidence, after considering the whole record. *Id*.  We will affirm the AHC's decision unless it:

> (1) Is in violation of constitutional provisions;
>
> (2) Is in excess of the statutory authority or jurisdiction of the agency;

---

[5]In its first amended petition, the Board asserted nine different grounds to discipline Chaganti's license. The AHC found that cause existed to discipline Chaganti's license pursuant to § 334.100.2(4) and (4)(g) for the actions taken by DePaul and St. Mary's and found that no cause existed to discipline Chaganti's license in regard to the other seven counts.  No one appeals from the AHC's determination regarding those seven counts.

6

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

§ 536.140.2, RSMo Cum. Supp. 2013. We will not substitute our judgment for that of the AHC on factual matters, but we review any questions of law concerning an agency's decision *de novo*. *Moheet v. State Bd. of Registration for Healing Arts*, 154 S.W.3d 393, 398 (Mo. App. 2004).

Chaganti asserts seven points on appeal, but points three and four are dispositive. In those points, Chaganti contends that nothing in section 334.100.2(4) and (4)(g) establishes that a licensee's omission of information on a reapplication for staff privileges or a licensee's failure to report to a hospital any changes of staff privileges at another hospital amount to "unprofessional conduct" as that term is used in section 334.100.2(4) and (4)(g). Chaganti asserts, therefore, that the Board lacked a statutory basis for filing the complaint against Chaganti's license for the actions taken by DePaul and St. Mary's. We agree.

Section 334.100.2(4)(g) provides:

> 2. The board may cause a complaint to be filed with the administrative hearing commission as provided by chapter 621 against any holder of any certificate of registration or authority, permit or license required by this chapter or any person who has failed to renew or has surrendered the person's certificate of registration or authority, permit or license for any one or any combination of the following causes:
>
> . . . .
>
> (4) Misconduct, fraud, misrepresentation, dishonesty, unethical conduct or unprofessional conduct in the performance of the functions or duties of any

7

profession licensed or regulated by this chapter, including, but not limited to, the following:

. . . .

(g) Final disciplinary action by any professional medical or osteopathic association or society or licensed hospital or medical staff of such hospital in this or any other state or territory, whether agreed to voluntarily or not, and including, but not limited to, any removal, suspension, limitation, or restriction of the person's license or staff or hospital privileges, failure to renew such privileges or license for cause, or other final disciplinary action, if the action was in any way related to unprofessional conduct, professional incompetence, malpractice or any other violation of any provision of this chapter[.][6]

---

[6]Section 334.100.2(4), RSMo Cum. Supp. 2010, lists sixteen other grounds upon which the Board may cause a complaint to be filed with the AHC against a licensee for conduct involving "misconduct, fraud, misrepresentation, dishonesty, unethical conduct or unprofessional conduct in the performance of the functions or duties." Those grounds are:

(a) Obtaining or attempting to obtain any fee, charge, tuition or other compensation by fraud, deception or misrepresentation; willfully and continually overcharging or overtreating patients; or charging for visits to the physician's office which did not occur unless the services were contracted for in advance, or for services which were not rendered or documented in the patient's records;

(b) Attempting, directly or indirectly, by way of intimidation, coercion or deception, to obtain or retain a patient or discourage the use of a second opinion or consultation;

(c) Willfully and continually performing inappropriate or unnecessary treatment, diagnostic tests or medical or surgical services;

(d) Delegating professional responsibilities to a person who is not qualified by training, skill, competency, age, experience or licensure to perform such responsibilities;

(e) Misrepresenting that any disease, ailment or infirmity can be cured by a method, procedure, treatment, medicine or device;

(f) Performing or prescribing medical services which have been declared by board rule to be of no medical or osteopathic value;

. . . .

(h) Signing a blank prescription form; or dispensing, prescribing, administering or otherwise distributing any drug, controlled substance or other treatment without sufficient examination, or for other than medically accepted therapeutic or experimental or investigative purposes duly authorized by a state or federal agency, or not in the course of professional practice, or not in good faith to relieve pain and suffering, or not to cure an ailment, physical infirmity or disease, except as authorized in section 334.104;

In finding cause to discipline Chaganti's license, the AHC specifically found that, because Chaganti did not intentionally fail to list his hospital affiliations on his reapplication to DePaul and did not intentionally fail to update his information with St. Mary's and report that DePaul had revoked his staff privileges, Chaganti did not engage in fraud, misrepresentation, dishonesty, or unethical conduct as those terms are used in section 334.100.2(4). Thus, for the Board to seek discipline against Chaganti's license under section 334.100.2(4), Chaganti's conduct had to constitute "unprofessional conduct in the performance of the functions or [his] duties[.]" The AHC found that Chaganti's conduct was unprofessional.

---

(i) Exercising influence within a physician-patient relationship for purposes of engaging a patient in sexual activity;

(j) Terminating the medical care of a patient without adequate notice or without making other arrangements for the continued care of the patient;

(k) Failing to furnish details of a patient's medical records to other treating physicians or hospitals upon proper request; or failing to comply with any other law relating to medical records;

(l) Failure of any applicant or licensee, other than the licensee subject to investigation, to cooperate with the board during any investigation;

(m) Failure to comply with any subpoena or subpoena duces tecum from the board or an order of the board;

(n) Failure to timely pay license renewal fees specified in this chapter;

(o) Violating a probation agreement, order, or other settlement agreement with this board or any other licensing agency;

(p) Failing to inform the board of the physician's current residence and business address;

(q) Advertising by an applicant or licensee which is false or misleading, or which violates any rule of the board, or which claims without substantiation the positive cure of any disease, or professional superiority to or greater skill than that possessed by any other physician. An applicant or licensee shall also be in violation of this provision if the applicant or licensee has a financial interest in any organization, corporation or association which issues or conducts such advertising[.]

9

The Missouri Supreme Court, however, has provided specific guidance about what constitutes unprofessional conduct under section 334.100.2(4).[7] In *Albanna v. State Board of Registration for Healing Arts*, the Supreme Court recognized a definition of "unprofessional conduct" used in *Perez v. State Board of Registration for Healing Arts*, 803 S.W.2d 160, 164 (Mo. App. 1991), that stated "unprofessional conduct warranting revocation of a license consists of 'any conduct which by common opinion and fair judgment is determined to be unprofessional or dishonorable.'" *Albanna*, 293 S.W.3d at 430. The *Albanna* court, noted that this definition was "circular and amount[ed] to the statement that unprofessional conduct constitute[d] unprofessional conduct." The *Albanna* court, therefore, turned to the section 334.100.2(4) and noted that the statute was "far more explicit, giving the profession, the board and the courts a clearer understanding of the conduct, practices or professional failings for which a licensee can be disciplined." *Id*. In interpreting "unprofessional conduct," the *Albanna* court acknowledged that section 334.100.2(4) specifically stated that "unprofessional conduct" included but was "not limited to" the 17 grounds[8] specified in subparagraphs (a) through (q) of section 334.100.2(4). The Court recognized, however, that "significant notice issues would arise if grounds not based in statutory language, (whether in subparagraphs (a)-(q) or somewhere else in the statute), were attempted to be used to provide a basis for a finding of unprofessional conduct." *Id*. at 431.

In *Albanna*, the Board did not specify any of the 17 grounds listed in subparagraphs (a) through (q) of section 334.100.2(4), and the *Albanna* court stated that "it is not within the

---

[7]Chaganti filed a motion to transfer this case to the Missouri Supreme Court before opinion on the ground that the statutory term "unprofessional conduct" as used in § 334.100.2(4)(g) is vague and unconstitutional. Given that the Missouri Supreme Court has provided specific guidance about what constitutes unprofessional conduct under section 334.100.2(4), we decline Chaganti's request to transfer this case to the Missouri Supreme Court before opinion.

[8]Section 334.100(2)(4) was amended in 2011 and now has 19 grounds listed in subparagraphs (a) through (s).

purview of this Court to speculate as to which grounds the board may have had in mind." *Id*.

The Court noted that the "17 grounds cover a wide range of conduct" and that the licensee's

conduct in the case fell within "some of those grounds." *Id*. In our case, however, the Board

specified the ground under which it sought to discipline Chaganti's license--subparagraph (g) of

section 334.100.2(4).

Subparagraph (g) of section 334.100.2(4) provides that the Board may file a complaint

against a licensee for "unprofessional conduct in the performance of the functions or duties"

including:

> (g) Final disciplinary action by any professional medical or osteopathic
> association or society or licensed hospital or medical staff of such hospital in this
> or any other state or territory, whether agreed to voluntarily or not, and including,
> but not limited to, any removal, suspension, limitation, or restriction of the
> person's license or staff or hospital privileges, failure to renew such privileges or
> license for cause, or other final disciplinary action, if the action was in any way
> related to unprofessional conduct, professional incompetence, malpractice or any
> other violation of any provision of this chapter[.]

Therefore, as it pertains to this case, subsection (g) provides that it may be unprofessional

conduct if a licensee is found to have a "[f]inal disciplinary action" by a hospital "if the action

was in any way related to unprofessional conduct." Like the definition of unprofessional conduct

provided for in *Perez*, 803 S.W. 2d at164, subsection (g) seems to be somewhat circular--

unprofessional conduct is a final disciplinary action involving unprofessional conduct. The

Supreme Court in *Albanna*, however, defined "unprofessional conduct" as that term was used in

section 334.100.2(4). As we have previously stated, the *Albanna* court looked to the 17 specific

subparagraphs (a) through (q) of section 334.100.2(4) to determine what constituted

"unprofessional conduct" and noted that "significant notice issues would arise if grounds not

based in statutory language, (whether in subparagraphs (a)-(q) or somewhere else in the statute),

11

were attempted to be used to provide a basis for a finding of unprofessional conduct." *Id*. at 431. We believe the same analysis would hold true for the use of the term "unprofessional conduct" in subparagraph (g) of section 334.100.2(4). In other words, to constitute unprofessional conduct the final disciplinary action taken by the hospitals in this case would have to involve one of the grounds specified in subparagraphs (a) through (f) and (h) through (q) of section 334.100.2(4) or would have to involve an action by the licensee prohibited "somewhere else in the statute." *Id*.

We do not find any statutory sections that would put a licensee on notice that his license could be disciplined for "unprofessional conduct" if the licensee inadvertently failed to list hospital affiliations on a reapplication for staff privileges at a hospital or if the licensee inadvertently failed to update information and report to another hospital that another hospital had revoked the licensee's staff privileges because the licensee had omitted past hospital affiliations on a reapplication for staff privileges. *See Merwin v. State Bd. of Registration for Healing Arts*, 399 S.W.3d 110, 117 (Mo. App. 2013) (Following *Albanna*, the court found that a physician's failure to disclose his history of alcohol abuse to a hospital was not unprofessional conduct and noted that significant notice issues would arise if grounds not based on statutory language were used to find unprofessional conduct). Indeed, representatives from DePaul and St. Mary's testified before the AHC that they did not consider their actions regarding Chaganti's staff privileges to be disciplinary actions and did not believe that Chaganti's actions in failing to list his hospital affiliations on his reapplication to DePaul and in failing to update his information with St. Mary's and report that DePaul had revoked his staff privileges were even related to Chaganti's professional competence.

Under the circumstances of this case, the Board has no lawful basis under section 334.100.2(4) and (4)(g) to assert a disciplinary action for "unprofessional conduct" against

12

Chaganti's license to practice as a physician.[9]  We, therefore, reverse the circuit court's judgment affirming the AHC's decision that cause existed to discipline Chaganti's medical license pursuant to section 334.100.2(4) and (4)(g).[10]

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

---

[9]Because we reach this conclusion, we need not address Chaganti's remaining contentions on appeal.

[10]Chaganti filed a motion for sanctions asking this court to summarily grant the appeal in favor of Chaganti and to award Chaganti attorney's fees because of the Board's violation of a stay order issued by this court.  We deny Chaganti's motion.